FIRST DIVISION 

May 30, 2000

No. 1-98-3632

THE PEOPLE OF THE STATE OF ILLINOIS,

Plaintiff-Appellee,

v.

ALBERT WIMBLEY,

Defendant-Appellant.

)

)

)

)

)

)

)

)

)

Appeal from the

Circuit Court of

Cook County

Honorable

John J. Moran,

Judge Presiding.

PRESIDING JUSTICE O'MARA FROSSARD delivered the opinion of the court:

Following a bench trial, defendant Albert Wimbley was found guilty of possession of a controlled substance with intent to deliver and sentenced to a nine-year prison term concurrent to a one-year prison term after his probation was revoked in case No. 96 CR 11878 (possession of a controlled substance).  On appeal, defendant only contests the ruling of the trial court denying his motion to quash arrest and suppress evidence.  Defendant contends that the trial court erred in denying his motion to quash, arguing that exigent circumstances did not justify the forced warrantless entry by the police into the apartment occupied by defendant.  The parties agreed to have the merits of defendant's motion determined simultaneously with the evidence at trial.  The record fails to demonstrate exigent circumstances to justify the warrantless entry.  We reverse. 

                                                                  FACTS

The only witness to testify for the prosecution was Chicago police officer James Polaski.  He stated that about 5:15 a.m. on December 14, 1996, he was in the area of 4500 West Jackson 
Boulevard in Chicago with four other police officers.  Officer Polaski testified that he had been a police officer for about 18 months, was wearing plain clothes and driving an unmarked vehicle.  The officers made a street stop of L.C. Ball.  Officer Polaski stated that he had never previously met Ball.  
Ball told Officer Polaski that narcotics were coming out of the basement apartment at 4531 West Jackson Boulevard.  Officer Polaski and his partner then took Ball to the back door of the basement apartment at 4531 West Jackson Boulevard.  The area around the doorway was open and about five steps led from the sidewalk level down to the door.  Lights were on in a nearby alley, but no light was on above the door.  A total of six to eight officers were present.  Officer Polaski stood behind Ball, about five feet from the door.  Officer Polaski told Ball to knock on the door of the apartment.  When defendant answered the door, Ball stated that he "needed one."  Officer Polaski saw that defendant was holding a small packet of crushed green plant which Polaski believed to be cannabis.  Defendant replied that he was out and slammed the door.  Officer Polaski testified that he and his partner kicked the door open seconds later.

Entering the apartment, Officer Polaski picked up the bag of cannabis from the floor and arrested defendant.  Officer Polaski recovered a loaded 9 millimeter handgun magazine from a table about seven feet from the door and also found on a nearby windowsill a loaded 9 millimeter handgun, $110, and a clear plastic bag.  Inside the bag were 160 smaller packets containing a white rock-like substance.  Officer Polaski testified that defendant stated that he stayed in the apartment and gave his verbal consent to a search.  Upon searching the apartment, the officers found a digital scale and additional rounds of ammunition.  The parties stipulated that a forensic chemist weighed and tested 89 out of the 160 packets and determined they contained 16.493 grams of cocaine.  The plant material was determined to be 1.2 grams of cannabis.

In the defendant's case L.C. Ball testified that he was arrested at 4500 West Jackson Boulevard by two police officers.  Ball denied that he voluntarily agreed to take the officers to the apartment.
  The officers told Ball to knock on the door of an apartment or they would kill him.  The police officers stood at the top of the stairs and to the side when Ball knocked.  Defendant answered the door after several minutes, wearing boxer shorts and no shirt.  When Ball asked for "Smokey," defendant stated that "Smokey wasn't there" and shut the door.  Ball testified that he had known defendant for one year but did not see him often.  Ball did not know where defendant lived and "had no idea who would come to the door."  Ball also stated that defendant had nothing in his hands when he opened the door.  About 10 seconds later, the officers told Ball to knock on the door a second time.  The officers kicked the door open when no one answered after 15 seconds.

Defendant testified that he lived in Maywood at the time of his arrest and that his cousin Timothy Herndon, now deceased, resided at 4531 West Jackson Boulevard.  Defendant stated that he had been out with his girlfriend until 2 a.m. and took her home.  He saw Herndon with a group 

of men on a street corner about 3 a.m., and Herndon agreed to let defendant stay the night at his apartment.  Defendant testified that soon after he went to bed, he got up to answer a knock at the door.  He opened the door and Ball asked if Smokey was there.  Defendant stated that Smokey was a friend of Herndon and that he did not see anyone else at the door.  He told Ball that Smokey was not there and closed the door.  Defendant then heard a pounding at the door before the door broke.  The officers entered, arrested him and searched the apartment.  Defendant denied saying that he lived at the apartment or consented to a search.  He also stated that he did not know that drugs were present.

After hearing arguments, the trial court found that Ball provided information to the police and based on the evidence denied the motion to quash arrest and suppress evidence, and found defendant guilty. 

ANALYSIS

Defendant argues that exigent circumstances did not justify the warrantless forced entry into the apartment and that the trial court erred in failing to quash the arrest and suppress the evidence.  The prosecution contends that probable cause was established when defendant opened the door with a bag of cannabis in his hand and exigent circumstances justified the warrantless forced entry.  

Usually, the decision of a trial court on a fourth amendment motion to quash arrest and suppress evidence will not be disturbed by a reviewing court unless that finding is determined to be clearly or manifestly erroneous. 
 People v. Foskey
, 136 Ill. 2d 66, 76 (1993).  In this case defendant indicated in his brief that he is not contesting the trial court's findings as to the facts and  the credibility of the witnesses, but rather challenging whether exigent circumstances justified the warrantless entry.  Where the facts and the credibility of the witnesses are undisputed, as here, the question of whether exigent circumstances are present is a question of law, subject to consideration by this court 
de novo
.
  People v. Abney
, 81 Ill. 2d 159, 168 (1980).

I. Standing

In considering a motion to suppress evidence based on an allegedly illegal search, the court must first determine whether the defendant has standing to challenge the search and seizure before addressing the merits of defendant's claim.  Defendant claims that as an overnight guest he has standing to challenge the warrantless entry into the apartment.  The State does not contest the issue of standing in this case.

Standing to claim the protection of the fourth amendment (U.S. Const., amend. IV) depends upon whether the person who claims the protection has a legitimate expectation of privacy in the invaded place.  
Rakas v. Illinois
, 439 U.S. 128, 143, 58 L. Ed. 2d 387, 401, 99 

S. Ct. 421, 430 (1978).  A subjective expectation of privacy is legitimate if it is one that society is prepared to recognize as reasonable.  
Katz v. United States
, 389 U.S. 347, 361, 19 L. Ed. 2d 576, 588, 88 S. Ct. 507, 516 (1967) (Harlan, J., concurring).  
Illinois courts have repeatedly declined to grant standing for purposes of contesting a search and seizure to persons who are guests or merely present in someone else's home or on another person's property which is searched.  
People v.. Ervin
, 269 Ill. App. 3d 141, 147 (1994).  Overnight guests in private homes, however, have a sufficiently legitimate expectation of privacy in the premises to confer standing to challenge a search
.  
Olson
, 495 U.S. 91, 109 L. Ed. 2d 85, 110 S. Ct. 1684.
  The overnight guest seeks shelter in another's home precisely because it provides him privacy and a place where he and his possessions will not be disturbed.  As recognized by the court in 
Olson
 "[w]e are at our most vulnerable when we are asleep because we cannot monitor our own safety" and "when we cannot sleep in our own home we seek out another private place to sleep, whether it be a hotel room, or the home of a friend."  
Olson
, 495 U.S. at 99, 109 L. Ed. 2d at 94-95, 110 S. Ct. at 1689.  Thus, in this case, as an overnight guest, defendant had a legitimate expectation of privacy and therefore standing to challenge the warrantless entry into the basement apartment.  

II. Exigent Circumstances

The central issue in this case is whether exigent circumstances justified the warrantless forcible entry into the basement apartment occupied by the defendant.  As a preliminary matter, we note that defendant does not claim that the apartment doorway was an enclosed area.  The witnesses testified that the doorway was in an open area, and Officer Polaski testified that he saw defendant holding the packet of cannabis in the doorway of the apartment.  Therefore, Officer Polaski was in a place where he had a lawful right to be when he saw defendant holding the cannabis.  The defense does not contest that the criminal nature of what Officer Polaski observed was immediately apparent.
  The defense does not contest the officer's conclusion that what he observed was cannabis.  Therefore, given that the defense does not contest that the criminal nature of the packet of cannabis was in plain view of the police officers, there is no issue regarding probable cause.

Our analysis centers on whether the warrantless entry by the police into the apartment violated defendant’s rights.  The defendant argues that constitutional safeguard in section 6 of article I of the Illinois Constitution, and in the 
fourth amendment to the United States Constitution, prohibit police officers from making warrantless, nonexigent entries into a private residence to make an arrest.  
Payton v. New York
, 445 U.S. 573, 63 L. Ed. 2d 639, 100 S. Ct. 1371 (1980).             

The Supreme Court in 
Payton
 noted that the physical entry into the home is the chief evil against which the fourth amendment is directed and held that the fourth amendment "prohibits the police from making a warrantless and nonconsensual entry * * * in order to make a routine felony arrest."  445 U.S. at 576, 63 L. Ed. 2d at 644, 100 S. Ct. at 1374-75.  The fourth amendment guarantees, "The right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures * * *."  U.S. Const., amend. IV.  Both the United States and Illinois Constitutions protect individuals against unreasonable searches and seizures.  U.S. Const., amends. IV; Ill. Const. 1970, art. I, §6;
 People v. Buss
, 187 Ill. 2d 144, 204 (1999).  
The fourth amendment generally prohibits the police from entering a private residence without a warrant. 
 People v. Foskey
, 136 Ill. 2d 66, 74 (1990).  It also bars the admission of evidence obtained as a result of an unreasonable search.  U.S. Const., amend. IV.
 
 The police,  are not required to obtain a warrant to enter a home if 
exigent circumstances exist.  However, the State bears the burden to demonstrate that exigent circumstances authorized the warrantless entry by the police. 
 People v. McNeal
, 175 Ill. 2d 335, 345 (1997).
  

It is a basic principle of fourth amendment law that a search or seizure carried out on a suspect's premises without a warrant is 
per se
 unreasonable unless police can show that it falls within one of the carefully designed set of exceptions based on the presence of  "exigent circumstances."  
Payton
, 445 U.S. at 573, 63 L. Ed. 2d at 648-49, 100 S. Ct. at 1378.  The fourth amendment seeks to balance the interest of citizens in being free from unreasonable interferences with privacy and the interest of fair law enforcement in protecting the community.  
People v. ABT
, 269 Ill. App. 3d 831 (1995).  Absent exigent circumstances, a threshold may not reasonably be crossed without a warrant.  
People v. Hilgenberg
, 223 Ill. App. 3d 286, 293-94 (1991).   

The cornerstone of an exigency analysis is whether the police officers acted reasonably.  
People v. Williams
, 161 Ill. 2d 1, 26 (1994).  In making such a retroactive determination, "the totality of the circumstances confronting the officers at the time the entry was made" must be evaluated.  
Foskey
, 136 Ill. 2d at 75.  In the present situation, the police went to the apartment to investigate an allegation that drugs were coming out of that basement apartment.  They asked L.C. Ball to knock on the door.  After Ball knocked, defendant answered, holding a small packet of cannabis in his hand.  Defendant and Ball spoke briefly and then defendant closed the door.  Ball knocked on the door again.  Failing to receive a response, the police kicked the door down, entered and arrested defendant.  Inside the apartment, the police recovered a gun, ammunition, money and 160 packets of rock cocaine.  Thus, the core of our consideration necessarily must rest on the totality of circumstances confronting the officers at the time of entry and whether the officers acted reasonably within that set of circumstances.
  The question before us is whether the information which the police had when they observed defendant holding the packet of cannabis in his hand while standing in the doorway constituted exigent circumstances which allowed the police officers to effectuate a warrantless entry into the apartment.

The 
Payton
 court recognized the long-settled principle that, absent exigent circumstances,

 a warrantless entry to search for weapons or contraband is unconstitutional even when a felony has been committed and there is probable cause to believe that incriminating evidence will be found within.  
Payton
, 445 U.S. at 587-88, 63 L. Ed. 2d at 651-52, 100 S. Ct. at 1381.  
Payton
, however, did not answer the question of what constitutes sufficient exigent circumstances to justify such an arrest.  The court characterized such circumstances as simply involving an "emergency or dangerous situation."  445 U.S. at 583, 63 L. Ed. 2d at 648-49, 100 S. Ct. at 1378.  We therefore turn for guidance to other cases which have analyzed what constitutes exigent circumstances
.

In 
Abney
, our supreme court articulated a general set of factors to determine whether a warrantless entry into a home is justified.  The most commonly referenced factors that may establish the existence of exigent circumstances include: (1) whether the offense under investigation was recently committed; (2) whether there was any deliberate or unjustifiable delay by the officers during which time a warrant could have been obtained; (3) whether a grave offense was involved, particularly one of violence; (4) whether the suspect was reasonably believed to be armed; (5) whether the police officers were acting upon a clear showing of probable cause; (6) whether there was a likelihood that the suspect would have escaped if not swiftly apprehended; (7) whether there was a strong reason to believe that the suspect was on the premises; and (8) whether the police entry, though nonconsensual, was made peaceably.  
Abney
, 81 Ill. 2d at 169-72.  Courts have also found exigent circumstances where police are in "hot pursuit" of a suspect who flees from a public place into his residence.  
United States v. Santana
, 427 U.S. 38, 49 L. Ed. 2d 300, 96 S. Ct. 2406 (1976). 
 The presence of all factors in a given situation is not necessary.  
People v. Cobb
, 97 Ill. 2d 465 (1983).
  Rather, these factors are guidelines and not cardinal maxims to be applied rigidly in each case.  
People v. White
, 117 Ill. 2d 194 (1987).  The guiding principle is reasonableness, and each case is evaluated based upon the totality of the circumstances known to the officers at the time of the warrantless entry.  
People v. Yates
, 98 Ill. 2d 502, 515 (1983). 

In 
Abney
, the court held that exigent circumstances existed where the suspect was apprehended 1½ hours after the victim was beaten with a crowbar and a pistol.  The receipt of such information about a recent offense, the court noted, could suggest to the officers the need for prompt action.  
Abney
, 81 Ill. 2d at 169.  Closely related to the fact that the officers acted promptly, was the fact that there was no deliberate or unjustified delay by the officers during which time a warrant could have been obtained.  
Abney
, 81 Ill. 2d at 170.  Finally, the need for prompt action was made apparent by the belief based on factual circumstances, that the suspect was armed and exhibited signs of a violent character.  
Abney
, 81 Ill. 2d at 171.

In 
People v. Yates
, 98 Ill. 2d 502 (1983), the court considered other circumstances which would suggest that the officers were justified in believing that the defendant must be arrested quickly.  In 
Yates
, following a brutal murder the police learned that defendant's girlfriend was raising money to enable him to leave the state and that defendant had received a tip-off that the police were "hot on his trail."  
Yates
, 98 Ill. 2d at 516.  The court held that, given the defendant's probable flight, a warrant would have delayed his apprehension and might have substantially increased possibility of flight and risk of a violent confrontation.  
Yates
, 98 Ill. 2d at 516-17.

However, in 
Foskey
, our supreme court found that 
the police were unjustified in believing that the defendant was armed and that their belief was insufficient for a finding of exigency.  
Foskey
, 136 Ill. 2d at 83.  The court further pointed out that the types of exigencies that existed in 
Yates
 and 
Abney
 were not they types of exigencies present in 
Foskey
.  In 
Foskey
, the defendant was charged with solicitation to murder a police officer.  The police received information from an informant about the plan.  The officers coordinated the arrest of the three suspects involved, went to the door of the defendant's home, knocked and announced their office.  After failing to receive a response and finding the door open, they entered the apartment.  They did not have a warrant.  The court held that at the time of the arrest there was nothing to suggest that the defendant's conduct constituted an immediate and clear danger to the police or to the safety of those around him.  
Foskey
, 136 Ill. 2d at 78.  The court pointed out that, although the conspiracy was planned, there was no indication that the defendant had a gun, that there was any danger from weapons which would require an unannounced entry or that immediate action was reasonably required to make the arrest.  
Foskey
, 136 Ill. 2d at 78.   

Likewise, in 
People v. Hassan
, 253 Ill. App. 3d 558 (
1993), the
 court found that exigent circumstances were absent and therefore, the police intrusion into defendant’s home was not justified.  In 
Hassan
 police officers, acting on an anonymous tip, set up surveillance of defendant’s home and witnessed several people walk up to the house and exchange money for a small package that was given to them by the defendant.  One of the undercover police officers walked to the front door, knocked and asked, “what you got?”  253 Ill. App. 3d at 562.  The defendant retrieved a small packet from the bar and handed it to the police officer at which time the officer announced his office and attempted to arrest the defendant.  The defendant tried to close the door but was unsuccessful.  He then pushed the door open and ran out into the front yard, where he was apprehended 
and arrested.  The police officers proceeded to enter the home and search for narcotics.  On appeal, the court found the police unlawfully entered defendant's home to seize the narcotics.  The court stated, "[w]e believe that there was probable cause to believe that a quantity of cocaine was on the premises, but there was no 'emergency' which required a quick response.  The officers could have obtained a warrant without the risk that the suspect would escape or harm others.  * * *  In short, * * * there was no need for swift action." 
Hassan
, 253 Ill. App. 3d at 571.  The court concluded that probable cause alone cannot justify a warrantless search and seizure absent exigent circumstances.  

Considering the totality of the circumstances confronting the officers at the time of the entry, we conclude that although the police had probable cause to arrest defendant they lacked sufficient exigent circumstances to justify a warrantless entry and therefore their conduct was not reasonable.  The police had no reason to believe that defendant was armed or dangerous based upon "'reasonably trustworthy information'" which 
Abney
 recognized can constitute exigent circumstances.  81 Ill. 2d at 171-72, quoting 
Dunaway v. New York
, 442 U.S. 200, 208 n.9, 60 L. Ed. 2d 824, 833 n.9, 99 S. Ct. 2248, 2254 n.9 (1979).  The information that the police received from L.C. Ball was that narcotics were "coming out of" the basement apartment.  He did not say that weapons were in the apartment.  Further, no weapons were seen by the police prior to their entry and there was no indication in the record that police had reason to believe the defendant was armed or dangerous.  There was also no indication there was danger from weapons that would require an unannounced entry or that immediate action was reasonably required to make the arrest.  

This was not a case of hot pursuit.  Although courts have found exigent circumstances present where police are in “hot pursuit” of a suspect who flees from a public place into his residence, that situation did not occur in this case.  
United States v. Santana
, 427 U.S. 38, 49 L. Ed. 2d 300, 96 S. Ct. 2406 (1976).  The defendant did not flee from a public place into his residence; rather, defendant was located inside the apartment when the police took Ball to the apartment and told him to knock on the door.  Here, 
defendant testified that when he opened the door, Ball asked for “Smokey.”  After telling Ball that Smokey was not there, defendant closed the door.  He testified that he did not see anyone else at or near the door and seconds later the police kicked the door open.  Thus, the police were not in hot pursuit of defendant when they entered the apartment
.  Moreover, when defendant opened the door the police did not announce their office nor did they speak to defendant.  The record is unclear as to whether defendant even knew the police were outside his door.  The record fails to demonstrate a factual basis to support the inference that defendant was likely to flee.  Moreover, t
here were several officers present at the scene who easily could have guarded the basement apartment to prevent any attempt at flight while a warrant was obtained.

The record also fails to demonstrate that the police had particular reasons to believe the evidence would be destroyed. 
 Our supreme court has expressly declined to establish a bright-line rule that the easy disposability of drugs 
per se
 creates exigent circumstances when drugs are the subject of the investigation.  
People v. Ouellette
, 78 Ill. 2d 511, 516 (1979).  In 
Ouellette
 a police officer's reference to heroin's "ability to be readily disposed of," was not a sufficiently particular reason to establish exigency based on the possibility of evidence destruction.  We are mindful that where the destruction of the narcotics is a motivation for the warrantless entry, the police "must have particular reasons to believe that the evidence will be destroyed" before exigent circumstances will arise.  
People v. Patrick
, 93 Ill. App. 3d 830, 833 (1981).  
Here, the record reflects no evidence that the police had "particular reasons" to believe that the evidence would be destroyed.  Officer Polaski's testimony that "* * * we kicked the door * * * to recover the cannabis before it was flushed," does not satisfy the requirement of particularity.  3 W. LaFave, Search & Seizure §6.5(a), at 337-340, §6.5(b) (3d ed. 1996).  Therefore, based on the record in this case exigent circumstances due to the easy disposability of drugs has not been established in order to justify the warrantless entry.
  

Further, unlike 
Abney 
and
 Yates
, this was not a grave crime.  Courts have considered grave crimes to be first degree murder, armed robbery, and assault.  
Minnesota v. Carter
, 525 U.S. 83, 142 L. Ed. 2d 373, 119 S. Ct. 469 (1998).  Finally, Officer Polaski testified that he and his partner kicked open the door.  Kicking down a door to enter a residence is a forced, not peaceable, entry.  In this case, there is an absence of factors which could establish the existence of exigent circumstances to justify a warrantless forced entry into the apartment.  

The State argues that sufficient exigent circumstances existed because the police could "reasonably infer" that defendant was armed and dangerous based on the tip that he was selling drugs.  The State further expands this argument and contends that the officer could reasonably infer that the house was a drug house, was well equipped with an arsenal of weapons and that individuals in drug houses usually exhibit violent tendencies when confronted by the police.  However, this argument is unpersuasive as none of these facts were developed in the record.  

Here, there was no evidence the police had particular reasons to believe the basement apartment was equipped with an arsenal of weapons.  
Moreover, no witness testified as to a belief the defendant was armed, dangerous or likely to exhibit violent tendencies.  Under the State's theory, a warrantless entry into a person's home would be justified in every situation where a  police officer saw what he believed to be criminal conduct involving drugs at a person's home.  He could always assume or infer that weapons are present and that the suspect is armed and dangerous.  As such, this inference would justify a warrantless entry into a private dwelling and would obviate any need for a warrant.  This broad interpretation, however, defies the protections afforded by the fourth amendment in limiting warrantless searches to situations involving specific exigent circumstances.  It also forecloses the requirement of producing evidence of a reasonable belief, based on the particular circumstances of a given situation, that a warrantless entry is justified.  
Abney
, 81 Ill. 2d at 171-72.  In this case, accepting the State's interpretation of exigent circumstances would be inconsistent with protections afforded by both the fourth amendment to the United States Constitution and article I, section 6, of the Illinois Constitution against warrantless searches.  

Parenthetically, we note that although we are mindful 
of other cases involving warrantless entries where the arrest and search were found lawful, we find these cases factually distinct and not applicable to this case.  In 
United States v. Santana
, 427 U.S. 38, 49 L. Ed. 2d 300, 96 S. Ct. 2406 (1976), a pre-
Payton
 case, the police went to Santana's home based on information that Santana had in her possession marked money which had just been used to make a heroin buy arranged by an undercover agent.  The police officers saw Santana standing in her doorway holding a brown bag, which they suspected contained narcotics.  As they approached her, the officers announced their office and the defendant retreated into the vestibule of her house.  The police officers followed her through the open door and caught her in the vestibule.  The court regarded the threshold of her doorway as a public place because she knowingly exposed herself to public view by choosing to stand in the doorway.  The court held that because the arrest was set in motion in this public place, where she knowingly and voluntarily exposed herself to public view and because there was "hot pursuit", the defendant could not defeat the arrest simply by attempting to escape to  the vestibule.  
Santana
, 427 U.S. at 43, 49 L. Ed. 2d at 305, 96 S. Ct. at 2410.  

While 
Santana
 does not discuss the validity of an arrest made where a suspect has come to the door in response to police knocking, a number of Illinois cases have found such warrantless arrests to be lawful.
  
In 
People v. Gaines
, 220 Ill. App. 3d 310, 320 (1991), the police went to the defendant’s home based on information they received regarding an aggravated criminal sexual assault.  After the police knocked on the door, the defendant opened the door and was arrested.  The court 
held that there was no improper conduct by the law enforcement officers and that the defendant lost the privacy he could have expected inside his home by coming to the door.  
Gaines
, 220 Ill. App. 3d at 319.  Similarly, in  
People v. Smith
, 152 Ill. 2d 229 (1992), police officers investigating a murder knocked on defendant’s apartment door.  The defendant answered the door and identified himself.  The officers then pulled him out into the hallway and arrested him.  The court found the officer's conduct to have been reasonable due to the existence of several exigent circumstances including the seriousness of the offense, and the peaceable way in which the police effectuated the arrest.

In 
People v. Pierini
, 278 Ill. App. 3d 974 (1996), the police not only effectuated a warrantless arrest but also seized evidence from the defendant’s apartment.  The police went to the defendant’s residence to investigate after receiving information regarding cannabis trafficking.  When the officer knocked on the door and defendant answered, the officer smelled a strong aroma of cannabis and saw a cigar box on a nightstand next to the door full of half smoked marijuana cigarettes.  The officer reached in the doorway, picked up one of the cigarettes and determined that it was indeed cannabis.  The court held the seizure was proper because the commission of the offense occurred in the presence of an officer, the police officer was acting on a clear showing of probable cause and his brief  incursion into defendant’s apartment to seize the cannabis cigarettes was both peaceable and minimal.
  
Pierini
, 278 Ill. App. 3d at 979.  

The present case, however, is factually distinct from the above cases.
  
First, unlike 
Santana
, here there was no evidence of hot pursuit.  Moreover, defendant was arrested inside of the apartment, not in the doorway to the apartment which
 
the 
Santana
 court viewed as a “public place” since Santana voluntarily stood in her doorway and exposed herself to public view.  
Santana
, 427 U.S. at 49, 49 L. Ed. 2d at 309, 96 S. Ct. at 2412-13.  Unlike 
Pierini
, here there was neither a minimal incursion, nor a peaceable intrusion into the apartment.  
Pierini
, 278 Ill. App. 3d at 979.  Consistent with the 
Pierini
 analysis, Professor LaFave has noted that if an arrestee does not retreat from the door but the police officer merely reaches in to manifest the fact of arrest, such a 
de minimus
 breaking of the vertical plane above the threshold should not itself make the warrantless arrest unlawful.  3 W. LaFave, Search & Seizure §6.1(e), at 258 (3d ed. 1996).  However, in the present case, the police did not merely reach into the apartment and break the vertical plane above the threshold in order to arrest defendant.  Instead, they broke down the door in order to gain entrance into the apartment to arrest defendant and then proceeded to search the apartment.  
          

The situation in this case further differs from 
Santana
 and its progeny in that in 
Santana
 the defendant was in the doorway when the officers arrived on the scene while here defendant went to the doorway in answer to a knock by a third person.  
Significantly, the court in 
Santana
 recognized that a person who willingly stands in an open doorway to the home gives up the privacy enjoyed in the sanctuary of the home.
  Unlike the defendant in 
Santana
 who knowingly exposed herself to public view and therefore had no expectation of privacy in the open doorway of her house, here the defendant only opened the door as the result of police subterfuge.
 

In the present situation, the police  used subterfuge to cause defendant to open the door.  T
he police used L.C. Ball in order to get defendant to come to the door.  However, even after defendant answered the door, holding a small packet of cannabis in his hand, the police did not step forth and announce their office.  Instead, they allowed L.C. Ball and defendant to have a brief conversation followed by defendant immediately closing the door.  They then asked L.C. Ball to knock on the door again.  Failing to receive a response from defendant, the police within seconds broke the door down and forcibly entered.  This type of 
conduct by law enforcement officers in causing a person they then arrest to open the door of a home has been held to vitiate the warrantless arrest when exigent circumstances are lacking and the officer uses deception or coercion.  
People v. Graves
, 135 Ill. App. 3d 727, 730 (1985).
  Thus, under the facts of this case, we cannot say that the police did not violate defendant’s fourth amendment rights where lacking exigent circumstances they forcibly entered the apartment without a warrant.

       III. Distinction Between Misdemeanor and Felony Not Dispositive in Exigency Analysis

We next address defendant’s argument that the warrantless entry and subsequent search were not justified because only a small amount of cannabis was involved.  Defendant argues that the amount of cannabis was only 1.2 grams, which is a Class C misdemeanor offense, and does not qualify as an exigent circumstance since it is not a violent or serious crime.  The State urges this court to consider the fact that the forced entry was supported by exigent circumstances, despite the fact that the initial offense committed was a misdemeanor.  That offense, the State argues, coupled with other factors, such as the inference that defendant was armed, justified the warrantless entry regardless of whether the offense was a misdemeanor.

As an initial matter, we point out that the distinction between a misdemeanor and a felony offense is not necessarily dispositive in determining whether exigent circumstances exist in a given situation.  Although police may make a warrantless entry into a home where the offense committed is a misdemeanor, the entry must still be justified with exigent circumstances.  In 
Welsh v. Wisconsin
, 466 U.S. 740, 80 L. Ed. 2d 732, 104 S. Ct. 2091 (1984), the United States Supreme Court considered whether the fourth amendment prohibited the police from making a warrantless night entry of a person's home in order to arrest him for a traffic offense.  The Court concluded that the State's only interest in entering the home was to obtain the defendant's blood-

alcohol level to charge him with the offense of driving while intoxicated.  However, the Court also noted that an additional important factor in determining exigent circumstances is the gravity of the underlying offense for which defendant is arrested.  The Court concluded that, in 
Welsh
, the State's interest did not present a compelling need to enter the defendant's home without a warrant. 
 Welsh
, 466 U.S. at 753-54, 80 L. Ed. 2d at 745-46, 104 S. Ct. at 2099-100.

Similarly, i
n 
People v. Eden
, 246 Ill. App. 3d 277 (1993), the court held that exigent circumstances did not justify the nonconsensual entry by officers into defendants' home after observing several minors consuming alcohol.  The court pointed out that the suspected infractions were not grave and did not involve violence.  Further, there was little likelihood that persons in the house would escape or be able to destroy all the evidence before the warrant was obtained since the house was surrounded and police were stationed at each exit of the home.  As such, the warrantless entrance was not justified in that case.

Likewise, in 
People v. Brown
, 277 Ill. App. 3d 989 (1996), the court held that no exigent circumstances were present based on the violation of a city ordinance of discharging a weapon in the air.  
The court held that although the defendant was known to be armed, his conduct in discharging a firearm was not a grave offense.  However, the court's analysis did not end there.  Using the exigent circumstance analysis the court further pointed out that the defendant made no attempt at flight even though he was aware of being wanted by the police, the police had all exits to the apartment secured, the police waited three hours before attempting to enter the apartment and there was no indication that anyone else was in the apartment who might be in danger.  
Brown
, 277 Ill. App. 3d at 996.

In contrast, in 
People v. Hart
, 88 Ill. App. 3d 484 (1980), the defendant was convicted of reckless conduct when he fired shots through the victim's bedroom window.  The court held that the police were justified in proceeding to effect a warrantless arrest of defendant where, due to the nature of the crime, officers had reason to believe defendant was armed and violent.  The court applied factors set out in 
Abney
, namely, the recentness of the offense and need for prompt action, the fact that there was no deliberate or unjustified delay by the officers during which time a warrant could have been obtained and the fact that the suspect was armed and exhibited a violent character.  The court went on to set forth additional factors which suggested that the police acted reasonably.  The court pointed out that there was the existence of a clear showing of probable cause, clear identification of the suspect, a belief that the suspect was on the premises and the fact that the entry was made peacefully.  
Hart
, 88 Ill. App. 3d at 489.  As illustrated by the above cases involving misdemeanors, the nature of the offense is but one of the factors used in determining the existence of exigent circumstances.  

CONCLUSION

We find the officers' warrantless entry into the apartment based on the totality of the circumstances was not reasonable.  The State presented no testimony that a reliable informant provided information that drugs were being sold from the apartment.  Officer Polaski testified that he had never met L.C. Ball before that morning.  Ball's reliability had not been established.  No police officer or other witness testified to observing drug sales from the apartment.  No undercover officer testified he purchased drugs from the apartment.  Before the police observed defendant answer the door holding a small packet of cannabis the only other information the police had was Ball's statement that "narcotics were coming out of the residence."  The fact that defendant was holding a small bag of marijuana together with the allegation that drugs were coming out of the apartment provided probable cause to arrest defendant for possession of a small amount of cannabis.  However, those facts did not create exigent circumstances justifying a warrantless forcible entry.

There was, prior to that entry, no evidence that the defendant was violent, armed, or dangerous.  
Abney
, 81 Ill. 2d at 171-72.  The police were not investigating a grave crime.  
Yates
, 98 Ill. 2d at 516.  There was no evidence of a substantial risk of flight and more than enough officers were present to secure the basement apartment while a warrant was obtained.  
Eden
, 246 Ill. App. 3d at 285.  There was no evidence that anyone else was in the apartment who might be in danger.  
Brown
, 277 Ill. App. 3d at 997.  The record demonstrates no particular reasons for the police to believe the evidence would be destroyed.  
Patrick
, 93 Ill. App. 3d at 833.  This was not a case of hot pursuit.  
Santana
, 427 U.S. at 43, 49 L. Ed. 2d at 303, 96 S. Ct. at 2409.  The record failed to establish an emergency which required swift action and a quick response.  
Hassan
, 253 Ill. App. 3d at 571.  The incursion into the apartment was neither minimal nor peaceable.  
Pierini
, 278 Ill. App. 3d at 979.  

Under the facts of this case, the State failed to sustain its burden to demonstrate exigent circumstances that called for immediate forcible entry and which justified the police action in breaking down the door.  Courts have consistently held that all of the factors and circumstances surrounding the incident must be evaluated in determining whether police are justified in forcibly entering a private residence.  We conclude that under the totality of the circumstances confronting the officers at the time of the entry into the apartment the police officers' forcible entry without a warrant was not justified by exigent circumstances and was not reasonable; therefore, all evidence must be suppressed.  

"'The point of the Fourth Amendment, which often is not grasped by zealous 

officers, is not that it denies law enforcement the support of the usual inferences which 

reasonable men draw from evidence.  Its protection consists in requiring that those 

inferences be drawn by a neutral and detached magistrate instead of being judged by the 

officer engaged in the often competitive enterprise of ferreting out crime.  Any assumption 

that evidence sufficient to support a magistrate's disinterested determination to issue a 

search warrant will justify the officers in making a search without a warrant would reduce 

the Amendment to a nullity and leave the people's homes secure only in the discretion of 

police officers.  Crime, even in the privacy of one's own quarters, is, of course, of grave 

concern to society, and the law allows such crime to be reached on proper showing.  The 

right of officers to thrust themselves into a home is also a grave concern, not only to the 

individual but to a society which chooses to dwell in reasonable security and freedom from 

surveillance.  When the right of privacy must reasonably yield to the right of search is, as a 

rule, to be decided by a judicial officer, not by a policeman or government enforcement 

agent.'" 
 Payton
, 445 U.S. at 586 n.24, 63 L. Ed. 2d at 650 n.24, 100 S. Ct. at 1380 n.24, 

quoting 
Johnson v. United States
, 333 U.S. 10, 13-14, 92 L. Ed. 436, 440, 68 S. Ct. 367, 

369 (1948).  

For the foregoing reasons, the trial court erred in denying defendant's motion to quash arrest and suppress evidence.  The warrantless entry was illegal, and all the evidence seized therein is suppressed.  Since the defendant could not have been convicted without this evidence, defendant's conviction for possession of a controlled substance with the intent to deliver is reversed.

Reversed.

RAKOWSKI and GALLAGHER, JJ., concur.