# ILLINOIS OFFICIAL REPORTS

## Appellate Court

---

### *People v. Slavin*, 2011 IL App (2d) 100764

---

| | |
|---|---|
| Appellate Court Caption | THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellee, v. RONALD W. SLAVIN, Defendant-Appellant. |
| District & No. | Second District<br>Docket No. 2-10-0764 |
| Filed | December 30, 2011 |
| Held<br>(*Note: This syllabus constitutes no part of the opinion of the court but has been prepared by the Reporter of Decisions for the convenience of the reader.*) | In a prosecution for possession of less than 2.5 grams of cannabis and drug paraphernalia arising from a conservation officer's warrantless entry of a fishing shanty, the trial court's denial of defendant's motion to suppress was upheld, since the warrantless entry was justified in view of the officer's reasonable belief that someone in the shanty was smoking cannabis, based on comments he overheard, his experience and training, and the exigency of the temporary nature of the structure. |
| Decision Under Review | Appeal from the Circuit Court of Lake County, No. 10-CM-572; the Hon. Thomas M. Schippers, Judge, presiding. |
| Judgment | Affirmed. |

Counsel on
Appeal

Thomas A. Lilien, of State Appellate Defender's Office, of Elgin, and Eric S. Palles, of Ravitz & Palles, P.C., of Chicago, for appellant.

Michael J. Waller, State's Attorney, of Waukegan (Stephen E. Norris and Sharon Shanahan, both of State's Attorneys Appellate Prosecutor's Office, of counsel), for the People.

Panel

JUSTICE BURKE delivered the judgment of the court, with opinion.

Justices McLaren and Birkett concurred in the judgment and opinion.


**OPINION**

¶ 1     Defendant, Ronald W. Slavin, was charged with possession of less than 2.5 grams of cannabis (720 ILCS 550/4(a) (West 2010)) and possession of drug paraphernalia (720 ILCS 600/3.5(a) (West 2010)). Defendant moved to suppress evidence that was obtained by a warrantless entry into and search of an ice fishing shanty within which he was fishing. The trial court denied the motion to suppress. Following a bench trial, defendant was found guilty of the charges and was sentenced to one year of conditional discharge and fined $750. On appeal, defendant contends the trial court erred by denying his motion to suppress evidence. We affirm.

¶ 2                                    FACTS
¶ 3     Conservation police officer Brandon Fehrenbacher testified at the hearing on defendant's motion to suppress. On Wednesday, January 27, 2010, from approximately 9 a.m. to 5 p.m., Fehrenbacher was patrolling Spring Lake, in Lake County, Illinois. As part of his employment with the Illinois Department of Natural Resources Law Enforcement, Fehrenbacher was making summary checks on ice fishermen to ensure that they were in compliance with fishing regulations, pursuant to section 1-185 of the Fish and Aquatic Life Code (Code) (515 ILCS 5/1-185 (West 2010)).

¶ 4     Sometime before noon, Fehrenbacher observed an ice fishing shanty on the west side of Spring Lake. He parked along the road and, upon exiting his squad car, made his way toward the ice shanty. Fehrenbacher then stopped outside the ice shanty for a period of approximately three to five minutes. During this time, Fehrenbacher listened to the conversation occurring within the ice shanty. He heard the occupants talking about fish that they wished to catch and he heard one occupant comment on who was going to "pack the bowl" and remark about the quality of the "weed." In Fehrenbacher's training and experience, the phrase "pack the bowl" is a reference to placing or packing cannabis inside

-2-

a glass pipe or bowl, which is used to inhale the cannabis. Fehrenbacher also heard a cough, which he described, based on his experience, as a sound someone would make after inhaling cannabis through a pipe.

¶ 5      Fehrenbacher described the ice shanty as being made of canvas and looking like an oversized tent-like structure, which was pulled out onto the ice and erected for persons to fish within it. When Fehrenbacher was outside listening, the inside was not visible. The bottom was made of plastic so the shanty could be easily dragged out onto the ice, quickly erected, and moved around the ice for fishermen to try different fishing holes. The purpose of such a shanty is to allow fishermen to fish through a hole cut in the ice while they are sheltered from the outside elements.

¶ 6      After hearing the occupants' conversation, Fehrenbacher opened the ice shanty front. He identified himself and observed the scene inside. Fehrenbacher saw three individuals, fishing equipment, tackle boxes, bait, buckets, a bench, and, possibly, a miniature heater. He did not see any sleeping arrangements, cooking apparatus, radio, or television. Fehrenbacher immediately detected an odor of burnt cannabis. Fehrenbacher informed the occupants that he smelled cannabis and he asked which one of them had possession of the drug. At that point, defendant produced from his right hand an orange glass pipe and from his coat pocket a plastic bag. The bag contained 1.93 grams of cannabis. Fehrenbacher proceeded to check the shanty for any illegal fishing devices and he checked the occupants for fishing licenses. Fehrenbacher then asked the occupants other than defendant if they were in possession of any illegal substances. Upon consent, they were searched and no such substances were found. Defendant was thereafter taken into custody and issued a notice of violation for the misdemeanors of possession of drug paraphernalia and of cannabis.

¶ 7      The State presented the following two-prong argument: (1) the entry was justified because the shanty was similar to an automobile, as it is was easily collapsible and moveable and the officer had probable cause to believe that the individuals inside the shanty were consuming cannabis, and (2) section 1-185 of the Code granted Fehrenbacher the power to search without probable cause. Defendant maintained that the shanty was more like a home and that he had a reasonable expectation of privacy, requiring the officer to obtain a warrant prior to entering. Defendant also argued that the warrantless search could not be justified as an administrative search pursuant to section 1-185 of the Code.

¶ 8      The trial court denied the motion to suppress. The court found that "the ice shanty [was] more akin to an automobile than to a home" and that the search fell under the "automobile exception" to the warrant requirement of the fourth amendment. The court stated that, "[u]nlike a home, [the shanty] is mobile and could be easily removed from the scene," implying that this made it impracticable for Fehrenbacher to obtain a warrant. Looking at the totality of the circumstances, the court concluded that the officer had probable cause to believe that cannabis was inside the shanty and that, therefore, the officer had a lawful basis to enter the shanty and search without a warrant.

¶ 9      Following a bench trial, the trial court found defendant guilty of possession of drug paraphernalia and of possession of cannabis and sentenced him to one year of conditional discharge and fined him $750. Defendant timely appeals the denial of the motion to suppress.

¶ 10             ANALYSIS

¶ 11  The review of a trial court's ruling on a motion to suppress involves mixed questions of law and fact. *People v. Gherna*, 203 Ill. 2d 165, 175 (2003). The trial court's factual findings are entitled to great deference. However, we review *de novo* the legal question of whether suppression is warranted under those facts. *Gherna*, 203 Ill. 2d at 175.

¶ 12  It is now fundamentally recognized that "the Fourth Amendment protects people, not places." *Katz v. United States*, 389 U.S. 347, 351 (1967). "But the extent to which the Fourth Amendment protects people may depend upon where those people are." *Minnesota v. Carter*, 525 U.S. 83, 88 (1998). Accordingly, to claim the protection of the fourth amendment, a defendant must demonstrate that he or she personally has an expectation of privacy in the place searched and that his or her expectation is reasonable, *i.e.*, an expectation of privacy "that has 'a source outside of the Fourth Amendment, either by reference to concepts of real or personal property law or to understandings that are recognized and permitted by society.' " *Carter*, 525 U.S. at 88 (quoting *Rakas v. Illinois*, 439 U.S. 128, 143 n.12 (1978)); accord *Smith v. Maryland*, 442 U.S. 735, 740-41 (1979).

¶ 13  Defendant believes that the trial court erred in finding that the ice shanty was more akin to an automobile than to a home. The automobile exception allows for the warrantless search of a vehicle when an officer has probable cause to believe that the vehicle contains contraband or other evidence of criminal activity. *People v. Stroud*, 392 Ill. App. 3d 776, 803 (2009). The basis of the exception is the reduced expectation of privacy in an automobile and the exigency of the automobile's mobility. See *Redwood v. Lierman*, 331 Ill. App. 3d 1073, 1082 (2002) (citing *South Dakota v. Opperman*, 428 U.S. 364, 367 (1976)).

¶ 14  Defendant points out that the automobile exception is based on a vehicle being readily moveable and capable of eluding police (*California v. Carney*, 471 U.S. 386, 393 (1985)) and that the application of the exception requires the "presence of the vehicle in a setting that objectively indicates the vehicle is being used for transportation" (*Carney*, 471 U.S. at 394). Unlike an automobile, defendant points out, the shanty is not readily mobile, as it must be dragged along the ice on its plastic bottom; it has no wheels; and, although portable, its mobility is not such as to have made obtaining a warrant impracticable.

¶ 15  Defendant maintains that an ice shanty is more like a tent than an automobile, as it is was clearly being used for shelter similar to that of a dwelling. See *United States v. Gooch*, 6 F.3d 673, 677 (9th Cir. 1993) (where the court noted that a tent is no more mobile than a piece of personal luggage and is more analogous to a large moveable container than to a vehicle). Although the fourth amendment protects an individual's privacy in a variety of settings, "[i]n none is the zone of privacy more clearly defined than when bounded by the unambiguous physical dimensions of an individual's home." *Payton v. New York*, 445 U.S. 573, 589 (1980). Because one's right to retreat into his or her home without unreasonable government interference is a core principle of the fourth amendment (*Kyllo v. United States*, 533 U.S. 27, 31 (2001)), law enforcement officers generally may not enter, much less search, a person's home without a warrant absent exigent circumstances. *Payton*, 445 U.S. at 590; *People v. Absher*, 242 Ill. 2d 77, 83 (2011).

¶ 16    Defendant cites a number of cases that have considered the question of whether a tent is sufficiently similar to a private dwelling to render warrantless government intrusion unreasonable. In *Kelley v. State*, 245 S.E.2d 872, 874-75 (Ga. App. 1978), the court held that "[t]hough a tent may not provide the sturdy protection against the winds, the rains, the heat, and the cold, which a customary house provides, the tent-dweller is no less protected from unreasonable government intrusions merely because his dwelling has walls of canvas rather than walls of stone. A dwelling place, whether flimsy or firm, permanent or transient, is its inhabitant's unquestionable zone of privacy under the Fourth Amendment." See also *United States v. Sandoval*, 200 F.3d 659, 660-61 (9th Cir. 2000) (defendant manifested an expectation of privacy in a tent on a public campground); *Gooch*, 6 F.3d at 673; *State v. Pruss*, 181 P.3d 1231, 1234 (Idaho 2008) (applying warrant requirement to the defendant's "hooch" of lashed-together tree limbs and plastic tarp); *Alward v. State*, 912 P.2d 243, 249 (Nev. 1996) (defendant had reasonable expectation of privacy in the tent such that the warrantless search of the tent violated the fourth amendment), *overruled on other grounds*, *Rosky v. State*, 111 P.3d 690 (Nev. 2005). Defendant notes that an Illinois court held that a tent was a "building" for purposes of the burglary statute, where the court observed that, notwithstanding that a tent is ordinarily portable, "when the structure is erected and is in use as a habitat or shelter, it achieves a degree of permanence." *People v. Netznik*, 66 Ill. App. 3d 72, 75 (1978). And, in *State v. Larsen*, 650 N.W.2d 144, 149 (Minn. 2002), a case similar to the present case, the court held that the defendant had a reasonable expectation of privacy in his fish house.

¶ 17    Defendant contends that, although the occupants of the shanty were not living or camping there, in many cases a person's expectation of privacy in a dwelling does not depend on where he or she sleeps. See *Minnesota v. Olson*, 495 U.S. 91, 96-97 (1990) (referring to "the mistaken premise that a place must be one's 'home' in order for one to have a legitimate expectation of privacy there"). Defendant asserts that activities of a personal nature take place in a shanty just as they do in a tent, despite there not being any sleeping arrangements (see *Larsen*, 650 N.W.2d at 149), and that many fishermen seek isolated areas for their pursuits because they do not want to be disturbed (*Pruss*, 181 P.3d at 1236). Defendant further points out that, although fishing is subject to government regulations, recreational fishing is not subject to the same pervasive and continuing government regulations and controls applicable to automobiles, an element of the justification for the automobile exception. See *Opperman*, 428 U.S. at 368. Finally, defendant claims that the automobile exception does not apply because occupants and contents of automobiles are in plain view, whereas defendant was concealed by the opaque canvas of the shanty.

¶ 18    We observe that, unlike in the cases cited by defendant, where the tent-like structures were used for dwelling purposes, the shanty in this case bore no similarities to a dwelling place. The shanty did not even contain a sleeping bag, which could indicate that defendant had expected to stay the night. As pointed out by the State, there is a distinction between overnight guests, who have a reasonable expectation of privacy, and people with a mere transitory presence on the premises at the time of a search, and this distinction is crucial to the fact that a person in this particular ice shanty had no expectation of privacy as someone in a camping tent would. See, *e.g.*, *People v. Brown*, 277 Ill. App. 3d 989, 994-95 (1996)

(mere transitory presence on the premises at the time of the search is insufficient to establish a legitimate expectation of privacy); *People v. Delgado*, 231 Ill. App. 3d 117, 119 (1992) (mere status as the sole occupant of girlfriend's mother's residence at time of search is not sufficient to establish a legitimate expectation of privacy); *United States v. Rigsby*, 943 F.2d 631, 636 (6th Cir. 1991) (presence of tent, in which no one was apparently residing, did not create a privacy interest in the otherwise nonprivate area surrounding it).

¶ 19    While we do not agree with defendant's position that the shanty is like a dwelling, we also do not agree with the trial court that the shanty is more like an automobile than a home. We note, however, that even the court in *Larsen*, the case relied upon by defendant, held that a person's privacy interest in a fish house is at least as great as that of a motor vehicle occupant. *Larsen*, 650 N.W.2d at 150. Nevertheless, whether the ice shanty is more like a dwelling or an automobile, we conclude that Fehrenbacher properly entered the shanty to conduct a search without a warrant, due to the presence of probable cause and exigent circumstances that made it impracticable to obtain a warrant. See *People v. Alexander*, 272 Ill. App. 3d 698, 704 (1995).

¶ 20    "Probable cause exists when the totality of the facts and circumstances known to the officers is such that a reasonably prudent person would believe that the suspect is committing or has committed a crime." *People v. Montgomery*, 112 Ill. 2d 517, 525 (1986). The existence of probable cause depends upon the totality of the circumstances at the time of the entry. *People v. Love*, 199 Ill. 2d 269, 279 (2002). " 'The standard for determining whether probable cause is present is probability of criminal activity, rather than proof beyond a reasonable doubt. [Citations.]' " *People v. Garvin*, 219 Ill. 2d 104, 115 (2006) (quoting *People v. Lee*, 214 Ill. 2d 476, 485 (2005)). Probable cause does not demand a showing that the belief that the suspect has committed a crime be more likely true than false. *People v. Jones*, 215 Ill. 2d 261, 277 (2005).

¶ 21    Here, Fehrenbacher had probable cause to believe the shanty contained contraband, based upon what he heard, coupled with his experience and training.[1] Prior to entering the shanty, the officer overheard an individual inside use the phrase "pack the bowl" and remark on the quality of the "weed." The officer also heard a distinct coughing sound that he believed, based on his experience and training, was the sound someone made after inhaling cannabis through a pipe. Even if an ordinary person would not understand such terms, it is enough that an officer of his experience and training suspects the use of drugs. *Jones*, 215 Ill. 2d at 282.

¶ 22    We further conclude that the specific exigency at hand justified Fehrenbacher's search of the temporary nondwelling structure without obtaining a warrant. The guiding principle in determining if exigent circumstances justify a warrantless entry is the reasonableness of the officer's actions, and each case is based upon the totality of the circumstances known to the officer at the time of the warrantless entry. *People v. Wimbley*, 314 Ill. App. 3d 18, 24 (2000). The potential destruction of narcotics does not constitute exigent circumstances sufficient to justify a warrantless entry unless the officer has particular reasons to believe that

---

[1]Defendant does not contend that the officer's overhearing what transpired through the walls of the shanty was a violation of his privacy interests.

the evidence will be destroyed. *Wimbley*, 314 Ill. App. 3d at 28.

¶ 23    Contrary to defendant's contention, Fehrenbacher could not have called another officer to monitor the scene while he obtained a warrant, as the suspected cannabis likely would have been removed from the scene or destroyed by simply smoking it or dropping it through the hole into the water below. Given the officer's reasonable belief that someone in the shanty was smoking cannabis, and his knowledge that the evidence likely would have been destroyed if he had delayed, the warrantless entry was reasonable under the fourth amendment. See *People v. Ouellette*, 78 Ill. 2d 511, 520 (1979).

¶ 24    Defendant argues that the State has forfeited the argument on appeal that the warrant requirement was excused by exigent circumstances, because the prosecutor did not raise it below. We make our " ' "own assessment of the facts in relation to the issues" ' and review *de novo* the trial court's ultimate legal ruling as to whether suppression is warranted." *People v. Johnson*, 237 Ill. 2d 81, 88-89 (2010) (quoting *People v. Cosby*, 231 Ill. 2d 262, 271 (2008), quoting *People v. Luedemann*, 222 Ill. 2d 530, 542-43 (2006)); see *People v. Bridgewater*, 235 Ill. 2d 85, 92-93 (2009). In addition, we may affirm the trial court's ruling on any basis found in the record. *Johnson*, 237 Ill. 2d at 89. Therefore, we are not required to honor any forfeiture that might have occurred.

¶ 25                                    III. CONCLUSION

¶ 26    Based on our analysis, we need not address the issue concerning a warrantless and suspicionless search pursuant to section 1-185 of the Code. Accordingly, we affirm the judgment of the circuit court of Lake County.

¶ 27    Affirmed.