STATE of Minnesota, pet. Appellant,

v.

Donald PERKINS, Respondent.

No. CX–97–905.

Supreme Court of Minnesota.

July 2, 1998.

Charles E. McLean, Winona County Atty., Steven L. Schleicher, Asst. Winona County Atty., Winona, for appellant.

John M. Stuart, State Public Defender, Leslie J. Rosenberg, Special Asst. State Public Defender, Minneapolis, for respondent.

## OPINION

STRINGER, Justice.

As a consequence of an obvious miscommunication regarding the trial court's concerns about police entry into a motel room, the state's proof at the omnibus hearing failed to address several important issues essential to a determination of the constitutionality of a search. We therefore reverse and remand for a reopening of the omnibus hearing.

At approximately 2:00 a.m. on January 12, 1997, three Winona police officers, travelling in two vehicles, responded to a call for assistance to remove occupants from a room at the Riverport Inn Motel due to excessive noise. Upon the arrival of the first two officers at the motel, the front desk manager advised them that he had previously telephoned Room 300 and informed the occupants that the front desk had received a

complaint that they were making too much noise. He further informed the officers that after receiving a second complaint, he went to Room 300 and told the occupants that if they did not quit making noise they would be removed. A third complaint precipitated the manager's call to the police for assistance in removing the occupants.

The two officers and a third officer who joined them accompanied the manager to Room 300 to provide back-up support while the manager asked the occupants to leave. The manager knocked on the door and Donald Perkins, dressed only in a long T-shirt, answered the door. When an officer asked for his name and date of birth, Perkins gave the name Joe Thomas, which two of the officers recognized to be false. While standing outside of Room 300, one of the officers noticed the strong smell of marijuana emanating from the room. Perkins argued with the manager when the manager told Perkins that all of the occupants would have to leave. The situation escalated when an officer asked if there were any females in the room and if they were decent. A voice from inside the room responded that there were females present who were not dressed [1]—to which the officer told the females to get dressed. The officers then waited less than a minute before entering the room. Once inside, an officer informed everyone present that they were under arrest for suspicion of possessing marijuana. The officers then searched the occupants, including five adult and juvenile males and two juvenile females, ages 12 and 16. The 12–year–old female had slurred speech and was obviously intoxicated. A red bra was lying in plain view on the floor between the hot tub and the bed. A search of the motel room and bathroom disclosed marijuana in the bathroom, beer, wine and other alcoholic beverage containers strewn across the floor of the room, 7 rocks of crack cocaine underneath a comforter lying on the floor, and 2 rocks of crack cocaine tucked inside the sweatband of a baseball cap lying in the room. Additional squads were called for transport and all of the occupants were taken into police custody. Perkins was charged with fifth-degree possession of a controlled substance based upon the cocaine found inside of the baseball cap. Another person in the room, Antwan Booker, was charged with criminal sexual conduct regarding the 12–year–old female present in the room.

At the joint omnibus hearing, Perkins and Booker moved to suppress the evidence obtained in the search because it was attendant to an unlawful arrest. They claimed since there was no probable cause to support the drug possession charge against Perkins the arrest was unlawful and, therefore, so too was the search. The subject of police *entry* into the motel room was never specifically addressed by the defense attorneys or the prosecutor during the hearing, but at the close of the joint omnibus hearing, the trial court asked for clarification regarding the questions it was to address in its forthcoming order. To that end, the trial court asked Perkins' attorney if "your argument extend[s] to the circumstances under which the hat * * * was seized * * * or not." Perkins' attorney replied that it did and that Booker's attorney would address the issues pertaining to the arrest of the defendants. Then the trial court said, "I understand. So you adopt those arguments as they pertain to circumstances of entry and what followed from the arrest?" Perkins attorney replied that was correct. Booker's attorney argued that the search and arrest were pretextual because the officers were on the scene with the motel manager in a deterrent role and then placed everyone under arrest based on the smell of marijuana and suspicion of its use. Booker's attorney did not specifically address entry into the motel room—he simply argued that it was a pretextual arrest and that its fruits must be suppressed because there were no attenuating circumstances.

At the close of the omnibus hearing the prosecutor waived closing argument indicating his preference to submit a written brief that would "include solely the challenges that were raised by defense counsel * * * arrest and probable cause independent of arrest." The trial court responded, "before you get

---

1. The police officer's report states that it was Perkins who said there were two women inside the room who were not dressed.

too far ahead of my thought process here, that's exactly what I'm focusing on, that issue of legality of arrest * * *." The prosecutor then outlined probable cause to arrest based on a totality of the circumstances, most of which arose after the police officers entered the motel room, but did not address important issues relating to police entry into the motel room.

The trial court issued its order suppressing the cocaine evidence and dismissing the complaint against Perkins finding that probable cause to arrest the defendants did not arise until after the police unlawfully entered the motel room. The trial court concluded that absent probable cause, the arrests were illegal and the fruits of the arrests including the cocaine must be suppressed citing *Payton v. New York,* 445 U.S. 573, 100 S.Ct. 1371, 63 L.Ed.2d 639 (1980) and *Wong Sun v. United States,* 371 U.S. 471, 83 S.Ct. 407, 9 L.Ed.2d 441 (1963). Since the state failed to advance any other theory supporting the search that produced the baseball cap with the cocaine secreted in the sweatband, the trial court held that the criminal complaint against Perkins for possession of a controlled substance must be dismissed.

On appeal, the court of appeals affirmed, reasoning that the trial court made it clear that it was focusing on the legality of the arrest and it was self-evident that the validity of the officers' entry would be challenged because Perkins would want the evidence excluded from the probable cause determination. Because the lawfulness of the entry was of paramount importance, but was largely unaddressed by counsel because of a misunderstanding as to what issues were of concern to the trial court, we granted the state's petition for further review requesting a reopening of the omnibus hearing.

We apply an objective standard for determining the lawfulness of an arrest or a search by taking into account the totality of the circumstances to determine whether the police have probable cause to believe that a crime has been committed, and if the objective standard is met, we will not suppress evidence or invalidate an arrest "even if the officer making the arrest or conducting the search based his or her action on the wrong ground or had an improper motive." *State v. Olson,* 482 N.W.2d 212, 214 (Minn.1992). *See*

*State v. Johnson,* 314 N.W.2d 229, 230 (Minn. 1982) ("The fact that it later turns out that the officers were wrong does not mean that they did not have probable cause at the time they made their assessment."). But a warrantless entry to make an arrest or engage in a search raises issues of the occupant's expectation of privacy and the sanctity the law accords one's home. In *State v. Othoudt,* we referred to the importance of the right to be free from a warrantless entry:

> [T]his court will not look kindly upon warrantless entries of family residences, justified on the flimsiest and most pretextual of excuses. The constitutional right to be free from unjustified, official invasions of one's home is basic, and this court will not tolerate its violation.

482 N.W.2d 218, 224 (Minn.1992). Thus, absent consent, emergency, or probable cause to believe that a felony has been committed and exigent circumstances exist, the Fourth Amendment to the United States Constitution and article 1, section 10 of the Minnesota Constitution prohibit police officers from entering a dwelling to make a warrantless arrest. *Id.* at 221–23 (citing *Payton,* 445 U.S. at 576, 100 S.Ct. 1371). Guests in a motel room are accorded similar privileges of privacy as we noted in *State v. Gray,* 456 N.W.2d 251 (Minn.1990). There, police officers entered a motel room and made a warrantless arrest of the defendant based on probable cause to believe that he committed an execution-style murder. *Id.* at 254–57. We determined that the "defendant clearly had a legitimate expectation of privacy in the motel room, which is necessary for a protectable [F]ourth [A]mendment interest." *Id.* at 255. Although we recognized that the preference for police officers to obtain a warrant is "strongest when a dwelling is involved," we nevertheless concluded that "[a] warrantless arrest by police in a home or similar area in which a suspect has a privacy interest is per se unreasonable unless exigent circumstances exist." *Id.* at 255–56. We upheld the warrantless entry and arrest on the basis that the trial court's determination that there was probable cause relating to a felony offense and the risk of flight and injury to others constituted exigent circumstances. *Id.* at 257.

 If Perkins was a guest in Room 300 he presumably was entitled to a reasonable expectation of privacy, but the motel manager had warned the Room 300 occupants twice they were making too much noise and disturbing other guests, and if there was another complaint they would be evicted. There was another complaint, and the manager summoned the police to assist in the ouster. Since Perkins' and the other occupants' expectation of privacy obviously was dependent on their right to occupy the motel room, *see, e.g., Abel v. United States,* 362 U.S. 217, 241, 80 S.Ct. 683, 4 L.Ed.2d 668 (1960); *Sumdum v. State,* 612 P.2d 1018, 1021–22 (Alaska 1980) (citing cases); *People v. Lerhinan,* 90 A.D.2d 74, 455 N.Y.S.2d 822, 825–26 (1982) (citing cases), a threshold question is whether their right to occupy the room had been terminated by the time the manager and police arrived at the door of Room 300. This determination would turn on whether the motel manager's warning that they would have to leave if there were more complaints about noise was, in effect, a self executing eviction when Perkins and the other occupants continued their obstreperous behavior. Or was their behavior so disrespectful of the rights of other guests that they had no reasonable expectation of privacy at all, particularly after repeated warnings? Perhaps the motel manager was entitled to resolve Perkins' and the occupants' right to occupancy under the circumstances here by simply going to the door of Room 300, as he did, and announcing that the occupants must leave. If he had the right to do so, the trial court should consider whether an immediate revocation of the occupancy right was justified under the circumstances, or whether their right of occupancy provides them a reasonable time to gather their belongings. Further there may still be issues relating to Perkins' status individually that bear on the validity of entry, such as standing, consent and/or probable cause plus exigent circumstances, which may or may not lead to the issue of search incident to a lawful arrest.

While the foregoing may not encompass all the issues that bear on the important rights of the parties, they do illustrate the need for remanding to the trial court for further consideration in an omnibus rehearing in the interest of justice.

We reverse and remand for the limited purpose of reopening the omnibus hearing and deciding the issues within 45 days, but retain jurisdiction for further consideration of these important constitutional issues. Upon completion of the proceedings the trial court's order shall be certified to this court for inclusion in the appellate court file in this matter.[2]

2. The state shall file its brief to this court within 15 days of the trial court's order. *See* Minn. R.Crim. P. 29.04, subd. 10.