THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellant, *v.*
MARTIN PAUL PATRICK, Defendant-Appellee.

Fourth District   No. 16439

Opinion filed February 24, 1981.

Ronald C. Dozier, State's Attorney, of Bloomington (Robert E. McIntyre, Assistant State's Attorney, and Robert J. Biderman and Denise M. Paul, both of State's Attorneys Appellate Service Commission, of counsel), for the People.

Daniel D. Yuhas and Gary R. Peterson, both of State Appellate Defender's Office, of Springfield, for appellee.

Mr. JUSTICE WEBBER delivered the opinion of the court:

This is an appeal by the State under Supreme Court Rule 604(a)(1) (73 Ill. 2d R. 604(a)(1)) from an order of the circuit court of McLean County which suppressed certain evidence. The basic question presented is the application of recent decisions by the Supreme Court of the United States in *Payton v. New York* (1980), 445 U.S. 573, 63 L. Ed. 2d 639, 100 S. Ct. 1371, and our own supreme court in *People v. Abney* (1980), 81 Ill. 2d 159, 407 N.E.2d 543. We affirm.

Defendant was charged by information with one count of possession of a controlled substance and one count of possession of cannabis. He pleaded not guilty and in due course filed a motion to suppress (1) all physical evidence seized from him, (2) all statements made by him following an "unlawful intrusion" by police officers, and (3) all testimony of the police officers and other persons concerning their observations and conversations following the intrusion. At the hearing on the motion to suppress the only witness was a Peoria police officer.

The evidence adduced at the hearing in summary form is as follows: The officer met with an informant at Bloomington police headquarters. He had never worked with this informant before. The informant stated that she had purchased narcotics on previous occasions from a person residing at an address on West Locust Street in Bloomington. She was searched, and given marked money; the officer accompanied her to the address; she entered the house there and at 8:10 p.m. on December 19, 1979, left the house and returned directly to the officer's automobile. There she turned over to him a plastic bag containing about 50 white capsules. Based upon his training and experience, the officer was able to identify the capsules as "white crosses," a form of amphetamine. The informant stated to the officer at this time that she had purchased the capsules from Martin Paul Patrick, that there was a large quantity of the same substance located in a freezer in the house, and that there were six other people in the house when she was inside.

The officer and the informant then left the area of West Locust and repaired to a location about four blocks distant where they met with six other officers who were there by prearrangement. The officer discussed the controlled purchase with the six others and at approximately 10:30 p.m. on the same night all of them returned to 1507½ West Locust.

The officer who had arranged the purchase and one other went to the front door of the premises and others stationed themselves at the rear. He knocked on the front door and it was answered by an unidentified female. He announced that they were police officers and asked permission to enter. The female said nothing but stepped back from the doorway, whereupon the officer and his fellow officer walked into the living room.

There he detected what he was able to identify based upon experience and training as a strong odor of cannabis. On a coffee table lay a bag containing a green leafy substance and some paraphernalia commonly used in the smoking of cannabis. Also on the same table lay some unidentified capsules.

Defendant was seated on a couch and at the officer's request identified himself by name and as an occupant of the house. The three, the officer, his fellow officer and the defendant, then repaired to a bedroom at the rear of the house where the officer told the defendant he was under arrest for possession of the substances observed in the living room, and read to the defendant his *Miranda* rights. Defendant acknowledged these and signed a document setting forth the rights. The officer then informed defendant that he could probably obtain a search warrant based upon what had theretofore happened and had been observed; he stated that he would, in fact, seek one unless defendant consented to a search of the premises. Defendant responded that he did not want to cause trouble for the other people in the house, and the officer replied that unless one or any of them were found in possession of narcotics, they would be permitted to leave after giving their names and addresses. Thereupon, defendant signed a consent to search.

The other persons were permitted to leave as agreed, and a search of the house was then made. It turned up a considerable quantity of cannabis, and a blue plastic bag which contained approximately 6,000 to 7,000 white cross tablets. Drugs were found in three of the six rooms in the house. Before the search was completed, the officer asked defendant about any money on his person; production of such money revealed one of the marked bills given to the informant earlier in the evening.

In *Payton*, the Supreme Court of the United States held that the fourth amendment applied to unreasonable government intrusion, and that the threshold of a man's house may not be crossed without a warrant, "absent exigent circumstances." The *Payton* court was not called upon to define exigent circumstances.

■■ However, these were limned by our supreme court in *Abney*. It is unnecessary to reiterate them here at length. Suffice it to say, some factors to be considered are: (1) The timing between the receipt of the information by police and the time of the offense; (2) any evidence that the suspect was aware of police action, and a consequent attempt to flee; (3) whether sufficient time existed in which to obtain a warrant; (4) whether the suspect was believed to be armed, or showed signs of violent character; (5) whether there was a clear showing of probable cause to enter; and (6) whether the defendant was clearly identified as the offender.

■■ In applying these factors to the case at bar, it is quite evident that no

exigent circumstances existed. The only information which the police had was that some amphetamines had been sold in the premises to an informer whose reliability had not been established, and according to the same source that there was a quantity of capsules in a freezer. The police then tarried two hours before returning to make a warrantless entry. There was no indication that the defendant was violent, armed or likely to flee.

The State argues that since drugs were involved, the possibility of disposal of them by the defendant before the officers could act created exigent circumstances. We do not agree. *People v. Ouellette* (1979), 78 Ill. 2d 511, 401 N.E.2d 507, concerned the failure of the police to announce their presence with a warrant before entering to search for drugs pursuant to the warrant. The State argued that narcotics themselves as a subject of criminal investigation create a *per se* set of exigent circumstances, since they may easily be disposed of.

The supreme court declined to establish such a doctrine and citing 2 W. LaFave, Search and Seizure 134-35 (1978), held that the police must have particular reasons to believe that the evidence will be destroyed before the knock is excused. We believe that the principle applies with even greater force when a warrantless entry is made, since it rests upon a much less secure legal foundation.

We note two recent cases in which the appellate court has reached conclusions similar to ours or factual situations which, while not identical, are so parallel as to persuade us. *People v. Wilson* (1980), 86 Ill. App. 3d 637, 408 N.E.2d 988; *People v. Wormack* (1980), 91 Ill. App. 3d 169.

■■ Two further issues in the State's appeal require brief comments. First, whether the doctrine of plain view can be applied, *i.e.*, the officer's observation of the cannabis and the paraphernalia after his entry. It cannot. The plain view doctrine is dependent upon an original lawful entry. (*Abney; Coolidge v. New Hampshire* (1971), 403 U.S. 433, 29 L. Ed. 2d 564, 91 S. Ct. 2022.) Since we have held the original entry unlawful, plain view cannot be invoked.

■■ Second, the State argues that the consent to search validates what afterwards occurred. We disagree. The consent, like plain view, is dependent upon a lawful entry. The illegal entry tainted all that subsequently occurred. (Compare *People v. Kelly* (1979), 76 Ill. App. 3d 80, 394 N.E.2d 739; *Wong Sun v. United States* (1963), 371 U.S. 471, 9 L. Ed. 2d 441, 83 S. Ct. 407.) To hold otherwise would be to vitiate *Payton* and *Abney*.

The order of the circuit court of McLean County was correct and it is affirmed.

Affirmed.

MILLS and GREEN, JJ., concur.