*In re* D.W., a Minor (The People of the State of Illinois, Petitioner-Appellee, v. D.W., a Minor, Respondent-Appellant).

First District (1st Division)    No. 1—01—0696

Opinion filed June 16, 2003.

518

Michael J. Pelletier and Heidi Linn Lambros, both of State Appellate Defender's Office, of Chicago, for appellant.

Richard A. Devine, State's Attorney, of Chicago (Renee Goldfarb, Judy DeAngelis, and John Mahoney, Assistant State's Attorneys, of counsel), for the People.

JUSTICE O'MALLEY delivered the opinion of the court:

Minor respondent-appellant D.W. was adjudicated delinquent upon a finding that he possessed more than 100 grams of a controlled substance. He was sentenced to three years' probation. He appeals his adjudication of delinquency and sentence.

## BACKGROUND

On November 20, 2000, D.W. filed notice of his motion to suppress physical evidence seized subsequent to his warrantless arrest on October 15, 2000. The motion to suppress alleged that on October 15, 2000, police officers seized evidence that may incriminate D.W.; D.W. had a valid property interest in the area searched; the seizure of the evidence was without lawful authority because the arrest was made without a warrant, no consent for arrest, search or seizure was given, the search and seizure violated D.W.'s right under the fourth amendment of the United States Constitution and sections 2, 6 and 10 of the Illinois Constitution; and the search and seizure was not incident to or contemporaneous with the valid arrest of petitioner.

At the November 28, 2000, hearing on D.W.'s motion to suppress, the parties stipulated that there was no search warrant or arrest warrant.

Officer David Harris testified that on October 15, 2000, Harris spoke with a citizen face to face and that citizen told him that there was someone selling drugs in front of the building at 2629 South Calumet Street. The citizen described the seller as a black male with a large build named Darrian. Officer Harris stated that he knew of the "Darrian" referred to because he had seen him in the neighborhood before. Harris stated that the police station was two blocks from the address given, he was in that area every day and he considered it to be a heavy narcotics trafficking area. Officer Harris testified that approximately 30 minutes elapsed between his receiving the information from the unnamed citizen and his going to the location. While in uniform, he and his partner proceeded to 2629 South Calumet Street. Harris stated that he and his partner approached from the front of the building and other officers approached from the rear of the building. When he approached the building, Harris noted that there were four people standing outside, two women and two men. Harris stated that one of the men fit the description provided to him earlier and that respondent is a fairly large individual, approximately 6 feet 1 inch, weighing around 225 pounds.

Officer Harris testified that when he drove up to the building, he "[e]xited the vehicle and walked toward the building. As we got toward the front of the building we motioned to the [respondent] that we needed to speak to him and at that time he fled. *** He ran up the stairs." The three other individuals did not move. Officer Harris chased respondent up the stairs, and respondent "entered the apartment at the top of the stairs." Harris was 5 or 10 feet behind respondent. When Harris arrived at the apartment door, the door "was slightly ajar" so he "just pushed it open." When he entered the

apartment, he saw respondent go into the rear bedroom and "remove a large plastic bag from his jacket and attempt to conceal it under a bed." Officer Harris testified that the large plastic bag looked like "a sandwich bag containing white powder," which he believed to be cocaine. Harris then "took control of the [respondent] and [his] partner recovered the bag." Prior to entering the apartment, Harris did not know who lived in the apartment.

On redirect examination, Officer Harris testified that he "dealt" with the unnamed citizen providing the information several times in the past and the person wished to remain anonymous. He stated that he knows where the unidentified person lives. Harris further testified that when he observed respondent on the outside stairs, he did not see any hand-to-hand transactions performed by respondent or money exchanged, he did not know whether respondent had drugs and he did not see respondent violate any state, local or federal laws. Harris affirmed that he did not conduct surveillance of the area.

Following Officer Harris's testimony, the State moved for a directed finding on respondent's motion to suppress. The trial court postponed argument and asked the parties to gather case law for its review. D.W. submitted a brief to the juvenile court asserting that no exigent circumstances existed in this case to justify a warrantless search of the minor's residence, the minor was not under investigation for a recently committed crime, the police officers did not observe the minor violate any laws and the officers were not acting upon a clear showing of probable cause.

During the December 7, 2000, hearing on the State's motion for directed verdict, the court held that the officers did not have "true probable cause upon arrival at the scene" but "it then becomes probable cause upon the minor fleeing." The court also stated that whether the offense under investigation was recently committed was obvious, there was no unjustified delay by the officers during which time a warrant could have been obtained, "perhaps" a grave offense was involved, the officers were acting upon a clear showing of probable cause, there was a likelihood that the suspect would have escaped, there was a strong reason to believe the suspect was on the premises, and the arrest was made peaceably. The motion to suppress evidence was denied.

At the January 4, 2001, stipulated bench trial, the parties stipulated to the previous testimony of Officer Harris. If called to testify, Officer Ormand (Officer Harris's partner) would testify as to the chain of custody of evidence seized and forensic scientist Dorothy Kernan would testify that the evidence tested positive for cocaine with an estimated weight of 124.2 grams. The respondent moved for a

directed finding following the stipulations. Without argument, the motion was denied. During respondent's case in chief, defense counsel adopted the argument articulated in her motion to suppress and the oral arguments made on December 7, 2000. The court made a "finding of delinquency of possession of controlled substance in excess of 100 grams."

In February 2001, D.W. was sentenced to 3 years' probation, 30 days in the juvenile detention center, *mittimus* was stayed, 24 days of "SWAP," "TASC" referral, random drug drops, mandatory school, and a 6 p.m. curfew.

D.W. presents the following issues for review: (1) whether the juvenile court erred in denying his motion to suppress evidence seized following a warrantless entry into D.W.'s residence; and (2) whether the juvenile court improperly concluded at D.W.'s sentencing that he was a gang member.

## ANALYSIS

### I. MOTION TO SUPPRESS

D.W. contends that the juvenile court erred in denying his motion to suppress the evidence obtained at his home because: (1) the uncorroborated tip by an unnamed citizen failed to establish probable cause; and (2) no exigent circumstances existed to justify the warrantless entry into D.W.'s residence. The State responds that the "hot pursuit" entry into the home and the subsequent arrest were proper based on the circumstances. Further, the State argues that probable cause to arrest arose upon respondent's flight from police and exigent circumstances supported Officer Harris's entry into the home.

### A. Standard of Review

■ Ordinarily, the decision of a trial court on a motion to quash arrest and suppress evidence will not be disturbed by a reviewing court unless that finding is determined to be manifestly erroneous. *People v. Love*, 199 Ill. 2d 269, 274, 769 N.E.2d 10 (2002). However, when neither the facts nor the credibility of the witnesses is questioned, the issue of whether exigent circumstances were present is a legal one and this court will consider the question *de novo*. *People v. Foskey*, 136 Ill. 2d 66, 76, 554 N.E.2d 192 (1990). Because the facts and credibility of the witness are not called into question here, we will review the motion to suppress *de novo*.

■ The defendant bears the burden of proof at a hearing on a motion to suppress and must make a *prima facie* case that the evidence was obtained by an illegal search and seizure. *People v. Berg*, 67 Ill. 2d 65, 68, 364 N.E.2d 880 (1977). If a defendant makes a *prima facie*

case, then the State has the burden of going forward with the evidence to counter the defendant's *prima facie* case. *People v. Wingren*, 167 Ill. App. 3d 313, 319, 521 N.E.2d 130 (1988).

## B. The Tip as Probable Cause

Respondent asserts that the juvenile court erred in denying his motion to suppress evidence because the evidence was obtained as a result of the warrantless entry into his home and the uncorroborated tip by an unnamed citizen failed to establish probable cause. The State contends that based on the reliability of the tip provided by Officer Harris's informant, respondent was subject to lawful arrest at the time that he fled from police. The State maintains that the unnamed citizen's tip was corroborated by the citizen's "accurate physical description of the Minor Respondent; his knowledge that the Minor Respondent's first name was Darian [*sic*]; that Officer Harris already knew of Darian [*sic*] as a 'regular' from the neighborhood; that based upon the citizen's physical description of the offender, Officer Harris recognized the offender as being the same Darian [*sic*] with whom he was familiar; that Darian [*sic*] was in fact present at the location where the citizen said he would be; and that Darian [*sic*] was present in a 'high narcotics area.' " We hold that this information, alone, did not constitute probable cause to arrest the respondent.

■ Probable cause exists for an arrest when the totality of the facts and circumstances known to the officers is such that a reasonably prudent person would believe that the suspect is committing or has committed a crime. *People v. Montgomery*, 112 Ill. 2d 517, 525, 494 N.E.2d 475 (1986). A police officer's knowledge of probable cause may be based on an informant's tip and, if the facts supplied in such a tip are essential to a finding of probable cause, the tip must be reliable. *People v. Patterson*, 282 Ill. App. 3d 219, 227, 667 N.E.2d 1360 (1996). The informant's veracity, reliability and basis of knowledge are determinative. *People v. Halmon*, 225 Ill. App. 3d 259, 274, 587 N.E.2d 1182 (1992). One indicium of reliability of information exists when the facts learned through police investigation independently verify a substantial part of the informant's tip. *Patterson*, 282 Ill. App. 3d at 227. The need for corroboration of an anonymous informant's tip is obvious where that person can never be cross-examined as to the reliability of his information or his motivation for providing it.

■ In our view, the substance of the tip here failed to adequately establish the informant's veracity or basis of knowledge. Officer Harris's citizen-informant described the drug seller as a black male with a large build named "Darrian." Harris affirmed during the suppression hearing that one of the men on the stairs fit the description provided

to him. Harris testified in detail as to the other male ("Young male black in his teens, say about 5'7", 130 pounds"). However, he did not describe the individual that he believed to be respondent. Harris merely affirmed that the individual that he pointed out in court, the respondent, was significantly larger than the other male he saw there. Officer Harris also testified that he knew of the "Darrian" referred to because he had seen him in the neighborhood. However, Harris also stated that he had never arrested Darrian and did not know that respondent lived in the building until after his arrest. The fact that Harris had seen a "Darrian" in the neighborhood before did not validate the informant's tip. These factors do not corroborate the informant's tip that criminal activity was afoot. An officer's reasonable suspicion of criminal activity requires that a tip be reliable in its assertion of illegality, not just in its tendency to identify a determinate person. *People v. Sparks*, 315 Ill. App. 3d 786, 794, 734 N.E.2d 216 (2000).

More importantly, the fact that the informant "is a person [Harris] dealt with several times in the past" did not lend to the reliability of the citizen's information. There was no testimony that the previous dealings supplied tips relating to narcotics or resulting in an arrest. See generally *People v. Adams*, 131 Ill. 2d 387, 546 N.E.2d 561 (1989).

Officer Harris did not know (or at least did not testify as to) what kind of drugs were being sold, how long respondent had been there or the basis of the informant's knowledge. Harris testified that he did not conduct any surveillance of the building, so at that time he could not answer those questions either. Here, when the officers arrived at the address provided, they could not, based on their observations, articulate facts that would demonstrate that a crime had occurred or was occurring. Simply because the information about the drugs turned out to be true does not mean that it provided Officer Harris, prior to pursuing respondent, with a reasonable basis for suspecting him of unlawful conduct. See *Sparks*, 315 Ill. App. 3d at 794-95.

Based on the insufficient showing of the informant's basis of knowledge or the reliability of his information and the minimal independent corroboration of the anonymous tip, we conclude that, under the totality of the circumstances in the present case, probable cause to arrest did not exist. See *People v. Ross*, 133 Ill. App. 3d 66, 73, 478 N.E.2d 575 (1985).

## C. Flight

Our next question is whether respondent's flight constituted probable cause to arrest. The State asserts that Harris's "articulable suspicion" "blossomed into probable cause when the [respondent]

took headlong flight from the officer as he approached." We find *Illinois v. Wardlow*, 528 U.S. 119, 145 L. Ed. 2d 570, 120 S. Ct. 673 (2000), instructive in resolving this issue.

In *Wardlow*, the defendant fled upon seeing police officers patrolling an area known for heavy narcotics trafficking. Two officers caught the defendant on the street, stopped him, and conducted a patdown search for weapons. Upon discovery of a .38-caliber handgun, the defendant was arrested. The trial court denied the defendant's motion to suppress, finding that the gun was recovered during a lawful stop and frisk. This court reversed the defendant's conviction, concluding that the gun should have been suppressed because the arresting officer lacked a reasonable suspicion sufficient to justify an investigative stop pursuant to *Terry v. Ohio*, 392 U.S. 1, 20 L. Ed. 2d 889, 88 S. Ct. 1868 (1968). The Illinois Supreme Court affirmed. The United States Supreme Court granted *certiorari* solely on the question of whether the initial stop was supported by reasonable suspicion.

■ The United States Supreme Court, in reviewing its reasoning in *Terry*, noted that an officer may, consistent with the fourth amendment, conduct a brief, investigatory stop when the officer has a reasonable, articulable suspicion that criminal activity is afoot. *Wardlow*, 528 U.S. at 123, 145 L. Ed. 2d at 576, 120 S. Ct. at 675, citing *Terry*, 392 U.S. at 30, 20 L. Ed. 2d at 911, 88 S. Ct. at 1884. The officer must be able to articulate more than an " 'inchoate and unparticularized suspicion or "hunch" ' " of criminal activity. *Wardlow*, 528 U.S. at 123-24, 145 L. Ed. 2d at 576, 120 S. Ct. at 676, quoting *Terry*, 392 U.S. at 27, 20 L. Ed. 2d at 909, 88 S. Ct. at 1883. The Court further noted that the fact that the stop occurred in a "high crime area" is among the relevant contextual considerations in a *Terry* analysis. *Wardlow*, 528 U.S. at 124, 145 L. Ed. 2d at 576, 120 S. Ct. at 676. However, in *Wardlow*, it was not merely defendant's presence in an area of heavy narcotics trafficking that aroused the officers' suspicion, but his unprovoked flight upon seeing the police. The Court concluded that the arresting officer was justified in suspecting that the defendant was involved in criminal activity and, therefore, in investigating further. *Wardlow*, 528 U.S. at 125, 20 L. Ed. 2d at 577, 120 S. Ct. at 676. While maintaining that its conclusion was consistent with its previous holding in *Florida v. Royer*, 460 U.S. 491, 75 L. Ed. 2d 229, 103 S. Ct. 1319 (1983) (when an officer, without reasonable suspicion or probable cause, approaches an individual, the individual has a right to ignore police and go about his business), the Court observed that "unprovoked flight is simply not a mere refusal to cooperate." *Wardlow*, 528 U.S. at 125, 145 L. Ed. 2d at 577, 120 S. Ct. at 676. The Court stated:

"Flight, by its very nature, is not 'going about one's business'; in

fact, it is just the opposite. Allowing officers confronted with such flight to stop the fugitive and investigate further is quite consistent with the individual's right to go about his business or to stay put and remain silent in the face of police questioning." *Wardlow*, 528 U.S. at 125, 145 L. Ed. 2d at 577, 120 S. Ct. at 676.

Respondent finds *Wardlow* distinguishable because *Wardlow* was a stop and frisk case for weapons on the public street. Respondent contends that "the issue here was the warrantless entry and seizure of evidence in a private home." While we agree that *Wardlow* is factually distinguishable, we find it instructive in our analysis of the reasonableness of the officer's action. In *Wardlow*, the police had not decided to stop and investigate defendant until he attempted to flee. The defendant in *Wardlow* merely looked in the officers' direction and fled.

■ Here, when motioned to by police, respondent fled. While we do not believe that the respondent's flight constituted probable cause to arrest (see *People v. Moore*, 286 Ill. App. 3d 649, 654, 676 N.E.2d 700 (1997), quoting 2 W. LaFave, Search & Seizure § 3.6(e), at 323-24 (3d ed. 1996)), it did give reason for the officer to seek to stop respondent and investigate his suspicious actions. The significant difference here is that respondent ran into his home.

## II. EXIGENT CIRCUMSTANCES

■ In this case, it is uncontested that entry into respondent's home and the seizure of the evidence subsequent to arrest were carried out without a warrant. Therefore, we must decide whether respondent's flight constituted an exigent circumstance that allowed the officers to effectuate a warrantless entry into respondent's apartment. More precisely, we must decide whether the right to make a *Terry* stop is extinguished where a defendant flees into his home. Where neither the facts nor witness credibility is questioned, the issue of exigent circumstances is a legal one to be reviewed *de novo*. *People v. Brown*, 277 Ill. App. 3d 989, 996, 661 N.E.2d 553 (1996).

■ It is a basic principal of fourth amendment law that. the police cannot enter a private residence without a warrant and evidence obtained as a result of an unreasonable search may not be used. *Payton v. New York*, 445 U.S. 573, 590, 63 L. Ed. 2d 639, 653, 100 S. Ct. 1371, 1382 (1980). In contrast, a warrantless arrest is valid if it is supported by probable cause. *People v. Rainey*, 302 Ill. App. 3d 1011, 1013, 706 N.E.2d 1062 (1999). Probable cause to arrest exists when the circumstances within the arresting officer's knowledge at the time of the arrest are sufficient to warrant a man of reasonable caution to believe an offense has been committed and that the individual arrested has committed the offense. *People v. Love*, 199 Ill. 2d 269, 279,

769 N.E.2d 10, 17 (2002). If probable cause for an arrest exists and evidence is seized in a search incident to arrest, then that evidence is admissible. *In re F.R.*, 209 Ill. App. 3d 274, 278, 568 N.E.2d 133 (1991).

■ The State bears the burden of demonstrating that exigent circumstances authorized the warrantless entry by the police. *People v. McNeal*, 175 Ill. 2d 335, 345, 677 N.E.2d 841 (1997). The cornerstone of an exigency analysis is whether the police officers acted reasonably. *People v. Williams*, 161 Ill. 2d 1, 26, 641 N.E.2d 296 (1994). The State must present evidence of the specific facts available to the police officers that would warrant a person of reasonable caution to believe that the action taken was appropriate. *People v. Washington*, 269 Ill. App. 3d 862, 866, 646 N.E.2d 1268 (1995).

■ Factors that Illinois courts have considered relevant to a determination of exigent circumstances involving warrantless entry into a private residence to effectuate an arrest include whether: (1) the crime under investigation was recently committed; (2) there was any deliberate or unjustified delay by the police during which time a warrant could have been obtained; (3) a grave offense was involved, particularly a crime of violence; (4) there was reasonable belief that the suspect was armed; (5) the police officers were acting on a clear showing of probable cause; (6) there was a likelihood that the suspect would escape if he was not swiftly apprehended; (7) there was strong reason to believe the suspect was in the premises; and (8) the police entry was made peaceably, albeit nonconsensually. *Williams*, 161 Ill. 2d at 26. "The guiding principle is reasonableness, and each case is evaluated based upon the totality of the circumstances known to the officers at the time of the warrantless entry." *People v. Wimbley*, 314 Ill. App. 3d 18, 26, 731 N.E.2d 290 (2000), citing *People v. Yates*, 98 Ill. 2d 502, 515, 456 N.E.2d 1369 (1983).

■ After reviewing the factors generally used to determine whether exigent circumstances existed, we hold that no exigent circumstances were present here to justify a warrantless entry into respondent's home.

First, we cannot say that it was "obvious" that the crime under investigation had been recently committed. Harris did not conduct surveillance of the respondent and had not observed any criminal activity prior to motioning to respondent. A probable cause determination must center on the information available to the officers preceding the search or arrest. *People v. Adams*, 131 Ill. 2d 387, 398, 546 N.E.2d 561 (1989).

The State avers that the crime of possession of a controlled substance and the warrantless entry occurred "simultaneously" and therefore the situation was a "classic hot pursuit." We disagree. Har-

ris did not know what, if any, crime was being committed as he chased respondent into the apartment. In fact, Harris stated that he had not conducted surveillance of the area in question and respondent was not under arrest. See *People v. Ouellette*, 78 Ill. 2d 511, 516, 401 N.E.2d 507 (1979) (rejected argument that the existence of narcotics is not, in itself, an exigent circumstance justifying intrusion into suspect's home); *People v. Patrick*, 93 Ill. App. 3d 830, 833, 417 N.E.2d 1056 (1981). He only became aware after entry into the apartment that respondent possessed what turned out to be narcotics. We cannot reason backward from the result to justify an illegal search.

The State next contends that there is no substantive difference between the facts in *United States v. Santana*, 427 U.S. 38, 49 L. Ed. 2d 300, 96 S. Ct. 2406 (1976), and the instant case. Following an undercover operation, officers sought to arrest an individual evidenced to be a drug dealer. As the officers approached to arrest, the defendant retreated into the vestibule of her house. The Supreme Court held that the defendant could not retreat into her house to thwart an otherwise proper arrest that had been set in motion in a public place. *Santana*, 427 U.S. at 42, 49 L. Ed. 2d at 305, 96 S. Ct. at 2409. However, in *Santana*, unlike the instant case, the police officers already had probable cause to arrest the defendant when they saw her in the doorway of her residence. Here, Officer Harris did not have probable cause to arrest respondent.

The State also contends that the officer obviously had reason to believe that respondent was on the premises, and if not immediately apprehended, there was a strong likelihood that respondent would have escaped. In our view, the record does not support a finding that exigent circumstances existed based on a likelihood that the suspect would escape if he was not swiftly apprehended. Officer Harris testified at the motion to suppress hearing that there were other officers stationed at the back of the building and the apartment itself did not have a back door. See *People v. Brown*, 277 Ill. App. 3d 989, 997, 661 N.E.2d 533 (1996) (court held that there was no reason why officers could not have maintained a stakeout for a time to procure a warrant where police had all exits to the apartment secured).

Interestingly, the State concedes in its brief that "on this particular occasion there was no attempt at destruction of evidence" but contends that that fact is "wholly irrelevant to the issue at bar." Indeed, the record reflects that the respondent did not attempt to destroy evidence, but was in fact observed attempting to conceal it under a bed. Even without this observation, the officer had no reason to believe that drug evidence, if any, would be destroyed and he did not testify to such a belief. "[W]here the destruction of the narcotics is

a motivation for the warrantless entry, the police 'must have particular reasons to believe that the evidence will be destroyed' before exigent circumstances will arise." *People v. Wimbley*, 314 Ill. App. 3d 18, 28, 731 N.E.2d 290 (2000), quoting *People v. Patrick*, 93 Ill. App. 3d 830, 833, 417 N.E.2d 1056 (1981).

Finally, we note that the State's characterization of this crime as a "grave offense" does not comport with the definition of "grave" offenses as defined by Illinois case law. Respondent here was found delinquent of possessing more than 100 grams of a controlled substance. Grave crimes are usually first degree murder, armed robbery and assault. *Wimbley*, 314 Ill. App. 3d at 29, citing *Minnesota v. Carter*, 525 U.S. 83, 142 L. Ed. 2d 373, 119 S. Ct. 469 (1998). At least one case, however, has held that narcotics trafficking is a grave offense (see *People v. Patterson*, 267 Ill. App. 3d 933, 941, 642 N.E.2d 866 (1993) ("While there was no violence involved in this drug transaction, narcotics trafficking is nevertheless a grave offense"); see also *People v. Broadie*, 37 N.Y.2d 100, 113, 332 N.E.2d 338, 343, 371 N.Y.S.2d 471, 477 (1975) ("Measured thus by the harm it inflicts upon the addict, and, through him, upon society as a whole, drug dealing in its present epidemic proportions is a grave offense of high rank"). We agree with the State, generally, and note that the sale and distribution of drugs with resultant addiction issues have perhaps done more to damage the fabric of modern society than any other single crime. Further, we believe that, frequently, the crimes of violence referenced in the case law as "grave crimes" are inextricably linked to drug trafficking. We therefore believe that the sale and distribution of drugs may properly be regarded as "grave." However, the gravity of the offense is only one factor to be considered.

Moreover, there was no reason to believe that respondent was armed or dangerous and the State did not present any evidence of such a belief. See *People v. Rivera*, 272 Ill. App. 3d 502, 509, 650 N.E.2d 1084 (1995) (*Terry* requires more than a generalized belief or statement that narcotic dealers may carry weapons).

Recently, in *Kirk v. Louisiana*, 536 U.S. 635, 153 L. Ed. 2d 599, 122 S. Ct. 2458 (2002) (*per curiam*), the Supreme Court revisited its holding in *Payton v. New York*, 445 U.S. 573, 63 L. Ed. 2d 639, 100 S. Ct. 1371 (1980), and held that "police officers need either a warrant or probable cause plus exigent circumstances in order to make a lawful entry into a home." *Kirk*, 536 U.S. at 638, 153 L. Ed. 2d at 603, 122 S. Ct. at 2459. Here, the officers had none of those things. In our view, the State has failed to meet its burden to demonstrate that exigent circumstances existed to allow for a warrantless entry into respondent's home. Moreover, had the evidence been suppressed, the

530

State could not have prevailed. Accordingly, we reverse the respondent's adjudication of delinquency outright. See *People v. Merriweather*, 261 Ill. App. 3d 1050, 1056, 634 N.E.2d 361 (1994).

Because we hold that the trial court erred in denying respondent's motion to suppress evidence, and reverse his adjudication of delinquency, we need not reach the issue of respondent's sentence.

Reversed.

GORDON, P.J., and McNULTY, J., concur.