2022 IL App (1st) 163406

Nos. 1-16-3406 & 1-19-0886 (consolidated)

March 07, 2022

First Division

_____

IN THE

APPELLATE COURT OF ILLINOIS

FIRST DISTRICT

_____

| | | |
|---|---|---|
| THE PEOPLE OF THE STATE OF ILLINOIS, | ) | Appeal from the Circuit Court |
| | ) | of Cook County, Illinois. |
| Plaintiff-Appellee, | ) | |
| | ) | No. 14 CR 18685 |
| v. | ) | |
| SEAN McCLENDON | ) | The Honorable |
| | ) | Stanley Sacks |
| Defendant-Appellant. | ) | Judge Presiding. |
| | ) | |

_____

JUSTICE WALKER delivered the judgment of the court, with opinion.
Presiding Justice Hyman and Justice Pucinski concurred in the judgment and opinion.

**OPINION**

¶ 1    A jury found Sean McClendon guilty of violating the armed habitual criminal provision of the Criminal Code of 2012 (Code) (720 ILCS 5/24-1.7 (West 2014)). McClendon contends his attorney provided ineffective assistance by failing to argue that police obtained the evidence against him as a result of an illegal seizure. We hold that McClendon abandoned the gun in response to an illegal seizure, and therefore, if his attorney had argued the issue, the trial court should have suppressed the gun and other evidence against McClendon. We reverse the conviction and vacate the sentence.

¶ 2                                    I. BACKGROUND

¶ 3    Around 11 p.m. on October 10, 2014, a police officer reported hearing gunfire in the vicinity of 99th Street and Hoxie Avenue. The reporting officer gave no description of the shooter and did not say whether the shooting involved a car. Officers Bryant McDermott and Robert McHale, on patrol wearing plain clothes in an unmarked car, drove to the area. At 99th Street and Yates Avenue, about four blocks from Hoxie Avenue, the officers noticed a black Nissan backing into a driveway. As their unmarked car passed the driveway, the driver and the passenger in the Nissan ducked down in their seats. The officers left their car to approach the Nissan, but the Nissan drove off onto Yates Avenue, with Poe as the driver and McClendon as a passenger. The officers lost track of the Nissan when it turned on 95th Street, but a police helicopter located it and followed. The police dispatcher asked the officers why they were following the Nissan. Eventually, the officers answered they followed the Nissan because they saw the car at "a house known for shooting." However, the officers admitted that the Nissan and those in the car were "probably not" involved with the shooting on Hoxie Avenue.

¶ 4    The officer in the helicopter followed the Nissan to 78th Street and South Shore Drive, where Officer Milot Cadichon and his partner, directed by helicopter, caught up with the Nissan in a parking lot. Cadichon and his partner pointed their guns at the two men they saw on a nearby porch, ordered them not to move, and took them into custody. The two men on the porch were McClendon and Emmanuel Poe. A few minutes later, an officer reported finding a gun on the porch. Prosecutors charged McClendon with violating the armed habitual criminal section of the Code.

¶ 5    McClendon's attorney filed a motion to suppress evidence of the gun found on the porch. At the hearing, Cadichon testified that he pulled into the parking lot right behind the Nissan and saw Poe exit from the driver's side while McClendon came from the passenger side of the Nissan. McClendon and Poe ran to the porch, where McClendon dropped an object. Another officer picked up the object, a gun, from behind the couch on the porch. The court denied the motion to suppress, finding that McClendon had no standing to object to the search of the porch.

¶ 6    At trial, after the jury saw the video recording taken from the helicopter, Cadichon amended his testimony considerably. He admitted that by the time his car entered the parking lot, no one remained in the Nissan. McClendon and Poe already stood on the porch, apparently trying to enter the building. Cadichon saw no one in the parking lot other than McClendon, Poe, and the numerous officers arriving in response to McDermott's report. Although McDermott said McClendon and Poe were probably not involved in the shooting on Hoxie Avenue, Cadichon still relied on the report of that shooting as grounds for pointing his gun at McClendon and Poe and ordering them to stop. According to Cadichon, McClendon moved "[m]aybe one or two feet at the most," pulled out a metal object, and dropped it behind the couch. Cadichon heard a "clink" as the object hit the wooden porch. Cadichon directed another officer to the spot and that officer retrieved the gun. No officer tested McClendon's hands or clothes or Poe's hands or clothes for gunshot residue. No officer checked the gun for fingerprints.

¶ 7    McDermott recounted the encounter at 99th Street and Yates Avenue, including his decision to approach McClendon and Poe because they ducked down in their seats when the unmarked car rolled slowly past the driveway where they parked. McDermott testified that he interviewed McClendon at the police station around 11:45 p.m. on October 10, 2014. According

to McDermott, McClendon readily admitted he had the gun, adding "There are a lot of mother f***" after him.

¶ 8     Poe testified he drove McClendon to 99th Street and Yates Avenue to his friend's home. After he parked in the driveway, he saw a car pull up on the street. Two men hopped out of the car and rushed at his car. Poe drove off fast. He could not tell whether the approaching men were police, but he had a suspended license, so he thought it best to leave fast. He drove back to 78th Street and South Shore Drive to rejoin a party he and McClendon had attended. He and McClendon rang the doorbell before police came and arrested them. Neither of them had a gun, and neither of them dropped anything on the porch.

¶ 9     McClendon corroborated Poe's account. They both stopped when police said, "Freeze." They faced police and put out their hands for cuffs. Neither McClendon nor Poe had a gun, and neither dropped anything on the porch. McClendon did not say to any officer that he had a gun or that anyone was out to get him.

¶ 10     The parties stipulated that McClendon had two prior felonies that would make his possession of a firearm a violation of the armed habitual criminal section of the Code. The jury found him guilty. The court denied his posttrial motion and sentenced him to eight years in prison. McClendon filed a timely appeal.

¶ 11     Before this court addressed the appeal, McClendon filed a postconviction petition, arguing primarily that he received ineffective assistance of counsel. The trial court dismissed the postconviction petition at the first stage of postconviction proceedings. McClendon appeals the dismissal of his postconviction petition. We consolidated the direct appeal of the conviction with the appeal from dismissal of the postconviction petition.

¶ 12                                    II. ANALYSIS

¶ 13    On appeal, McClendon argues that his trial counsel provided ineffective assistance by failing to argue that the gun and any statements about the gun constituted fruits of an illegal seizure. He also contends the evidence does not support a finding beyond a reasonable doubt that he possessed the gun.

¶ 14    For the appeal from the dismissal of his postconviction petition, McClendon need only show that he has stated the gist of a claim that his attorney's acts deprived McClendon of his right to effective assistance of counsel. *People v. Edwards*, 197 Ill. 2d 239, 244 (2001). We review *de novo* the dismissal of the petition without an evidentiary hearing. *Id.* at 247. For the direct appeal, McClendon must show "the unargued suppression motion is meritorious, and that a reasonable probability exists that the trial outcome would have been different had the evidence been suppressed." *People v. Henderson*, 2013 IL 114040, ¶ 15.

¶ 15    The trial court denied the motion to suppress based on its finding that McClendon had no standing to object to the search of the porch. However, the location of a search incident to an unlawful seizure makes no difference. The trial court should suppress all evidence obtained as a result of any violation of the fourth amendment to the United States Constitution, including an illegal seizure. U.S. Const., amend. IV; *People v. Burns*, 2016 IL 118973, ¶ 47; *People v. Townes*, 91 Ill. 2d 32, 39 (1982).

¶ 16    The fourth amendment forbids unreasonable searches and seizures. *People v. Gherna*, 203 Ill. 2d 165, 176 (2003). "A person has been seized within the meaning of the fourth amendment only when, in view of all the circumstances surrounding the incident, a reasonable person would have believed that he or she was not free to leave." *People v. Thomas*, 198 Ill. 2d 103, 111 (2001).

To determine whether a seizure has occurred, Illinois courts look primarily to four factors: " '[(1)] the threatening presence of several officers, [(2)] the display of a weapon by an officer, [(3)] some physical touching of the person of the citizen, or [(4)] the use of language or tone of voice indicating that compliance with the officer's request might be compelled.' " *People v. Cosby*, 231 Ill. 2d 262, 274 (2008) (quoting *United States v. Mendenhall*, 446 U.S. 544, 554 (1980)).

¶ 17    In this case, Cadichon pointed his gun at McClendon, and Poe and ordered them to stop. Other officers surrounded McClendon and Poe. While Cadichon said McClendon and Poe did not immediately stop moving, he admitted they stayed on the porch, which was only 10 feet wide and 5 feet deep, until officers handcuffed them. McClendon and Poe submitted to the officers' authority by remaining on the porch. Applying the *Cosby* factors, we find that officers seized McClendon and Poe when several officers drew their weapons, surrounded McClendon and Poe, and ordered them to stay on the porch where they were subsequently arrested.

¶ 18    The fourth amendment permits seizures "only when the police officer has specific, articulable facts which, when taken together with rational inferences, create a reasonable suspicion that the private citizen is involved in criminal activity." *In re Rafeal E.*, 2014 IL App (1st) 133027, ¶ 25. "The officer must have this valid justification for seizing the individual at the moment of the seizure. [Citations]. In determining whether the officer had a reasonable suspicion, a court considers the totality of the circumstances known to the officer at the time." *In re Edgar C.*, 2014 IL App (1st) 141703, ¶ 97.

¶ 19    Police first noticed McClendon and Poe when their black Nissan backed into a driveway about four blocks from the area where another officer reported hearing gunshots. McClendon and Poe ducked down in their seats as the officers' unmarked car passed the driveway. When the

officers in plain clothes approached the Nissan, the car took off with Poe as the driver and McClendon as a passenger. The officers soon lost sight of the Nissan. A helicopter, but not police cars, followed the Nissan to 78th Street and Stony Island Avenue. The officers who radioed for the helicopter admitted that the car and its occupants were "probably not" connected to the gunshots from Hoxie Avenue. When the police dispatcher asked why police should follow the Nissan, the officers said they saw the car at "a house known for shooting."

¶ 20    Cadichon saw the empty Nissan in the parking lot, and then he saw McClendon and Poe standing on a porch nearby. At that point, no officer claimed to have seen McClendon or Poe engaged in any criminal activity or at the scene of any crime. No officer claimed to have seen McClendon or Poe in possession of a firearm. Slouching in a car seat as an unmarked car passes does not support an inference of criminal activity. Courts have consistently held that running from police, absent other circumstance indicating criminal conduct, is not sufficient to establish the reasonable suspicion necessary to effectuate an investigatory stop without other circumstances. See, *e.g.*, *People v. Bloxton*, 2020 IL App (1st) 181216, ¶ 21 (avoiding an approaching officer does not, on its own, give rise to probable cause or even reasonable suspicion); *In re D.L.*, 2018 IL App (1st) 171764, ¶ 29 (no reasonable suspicion where, "aside from [respondent's] flight, there was no testimony showing that respondent was acting suspiciously in any way"); *People v. Harris*, 2011 IL App (1st) 103382, ¶ 15 (finding evidence of flight was insufficient to justify *Terry* stop where the only evidence justifying the stop was defendant's evasive conduct). Thus, where flight alone is insufficient to meet even this lower standard necessary for the *Terry* investigatory stop, flight alone is not sufficient to establish probable cause to arrest. *In re D.W.*, 341 Ill. App. 3d 517, 526 (2003). Furthermore, avoiding an unmarked car does not support an inference of criminal activity.

See *People v. Craine*, 2020 IL App (1st) 163403, ¶¶ 33-47; *People v. Rockey*, 322 Ill. App. 3d 832, 838 (2001).

¶ 21    Because the officers acknowledged that the Nissan probably had nothing to do with the shots on Hoxie Avenue, those shots do not justify the seizure. Parking in the driveway of a "house known for shooting" does not justify an investigatory stop or the seizure. McClendon and Poe remained on the small porch after Cadichon pointed his gun at them and ordered them to stop. According to Cadichon's testimony, which the trial court found credible, McClendon stepped to the couch on the porch, about one or two feet from where McClendon stood. McClendon and Poe submitted to the officers' authority, completing the seizure before McClendon, according to Cadichon, dropped the gun. The temporal proximity, the lack of intervening circumstances, and the lack of justification for the seizure all show that the abandonment resulted from the illegal seizure. Cadichon had no reasonable articulable suspicion for the warrantless seizure of McClendon and Poe. We find Cadichon illegally seized McClendon and Poe when he pointed his gun at them and ordered them to stay.

¶ 22    McClendon argues that his trial counsel provided ineffective assistance (1) by failing impeach Officer Cadichon and attack his credibility and (2) by failing to argue that the illegal seizure required suppression of the gun and McClendon's purported statements as fruit of the poisonous tree. Under the fruit of the poisonous tree doctrine, the court must suppress any evidence obtained by exploiting an illegal seizure. *Henderson*, 2013 IL 114040, ¶ 33. The trial court should have suppressed the gun and testimony about statements to police unless "the chain of causation proceeding from the unlawful conduct has become so attenuated or has been interrupted by some

intervening circumstance so as to remove the 'taint' imposed upon that evidence by the original illegality." (Internal quotation marks omitted.) *Id.*

¶ 23    The sixth amendment to the United States Constitution (U.S. Const., amend. VI) guarantees those accused of crime the right to the effective assistance of counsel. *People v. Cole*, 2017 IL 120997, ¶ 22. To prevail on an ineffective assistance claim, a defendant must establish that (1) "counsel's performance was objectively unreasonable under prevailing professional norms" and (2) "there is a 'reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different.' " *People v. Cathey*, 2012 IL 111746, ¶ 23 (quoting *Strickland v. Washington*, 466 U.S. 668, 694 (1984)). Courts will disturb a conviction based on ineffective assistance of counsel if the totality of counsel's conduct indicates actual incompetence. A reasonable probability of a different result is a probability sufficient to undermine confidence in the outcome of the proceedings. *Strickland*, 466 U.S. at 694.

¶ 24    The State argues that McClendon's abandonment of the gun purges the evidence of the taint of the illegal seizure. The State compares this case to *California v. Hodari D.*, 499 U.S. 621 (1991). Our supreme court in *Henderson* explained *Hodari D.*:

> "In *Hodari D.*, two officers were on patrol when they noticed four or five youths huddled around a parked car. As the officers' car approached, the youths, including Hodari, panicked and took flight. Immediately prior to one of the officers tackling Hodari, he tossed away a small rock of crack cocaine, which police recovered. In the subsequent juvenile proceeding, Hodari moved to suppress the drug evidence. The court denied the motion, but the California Court of Appeal reversed, holding that Hodari was seized when he saw the officer running toward

him; this seizure was unreasonable under the fourth amendment; and the evidence of cocaine had to be suppressed as the fruit of that illegal seizure. *Hodari D.*, 499 U.S. at 623. The California Supreme Court denied review. On *certiorari*, the United States Supreme Court reversed and remanded. *Id.* at 629.

The narrow question before the Court was 'whether, with respect to a show of authority, as with respect to application of physical force, a seizure occurs even though the subject does not yield.' *Id.* at 626. The Court held it does not. *Id.* The Court reasoned that, assuming the officer's pursuit of Hodari constituted a show of authority enjoining him to halt, because Hodari did not submit to that show of authority, he was not seized within the meaning of the fourth amendment. Thus, the cocaine Hodari abandoned while running from police was not the fruit of a seizure, and his motion to suppress evidence of the cocaine was properly denied." *Henderson*, 2013 IL 114040, ¶¶ 38-39.

¶ 25    *Hodari D.* establishes that the abandonment of property prior to an illegal seizure permits the admission into evidence of the abandoned property. *Hodari D.* does not disturb the underlying principle: "While it is true that a criminal defendant's voluntary abandonment of evidence can remove the taint of an illegal stop or arrest [citation], it is equally true that for this to occur the abandonment must be truly voluntary and not merely the product of police misconduct." *United States v. Beck*, 602 F.2d 726, 729-30 (5th Cir. 1979). Hence, property is not voluntarily abandoned when the abandonment is in response to, or the result of, the unlawful conduct by police. See *Gordon v. State*, 4 S.W.3d 32, 37-38 (Tex. App. 1999) (holding that defendant's dropped packet of cocaine in a patrol car following an illegal seizure was inadmissible because defendant

abandoned the cocaine in response to the illegal seizure); see also *Wingate v. State*, 764 S.E.2d 833, 838 (Ga. 2014) (finding where there is an illegal seizure that caused defendant to abandon drugs in a high school office, the drugs were inadmissible as the product of the illegal seizure). In both *Gordon* and *Wingate*, the defendant's lack of an ownership interest in the police car or the high school office had no bearing on the admissibility of the abandoned objects.

¶ 26 The Supreme Court of Florida aptly summarized the case law:

> "In all of the above cases, the defendant was stopped illegally, submitted to the officer's show of authority, and dropped contraband before it could be discovered on his person. Because the initial detention was illegal and the defendant was in fact seized, the court in each case suppressed the fruit of the illegal detention, as the contraband was not voluntarily abandoned. *** *Hodari* does not change this analysis because that case does not deal with the situation of a person being seized and then abandoning something, but rather with a person abandoning something before being seized. Nowhere in the *Hodari* opinion does the Court imply that evidence discarded by a defendant during an actual seizure should not be suppressed if that seizure is illegal." *Hollinger v. State*, 620 So. 2d 1242, 1243 (Fla. 1993).

¶ 27 In this case, McClendon and Poe remained on the small porch after Cadichon pointed his gun at them and ordered them to stop. According to Cadichon's testimony, which the trial court found credible, McClendon stepped to the couch on the porch, about one or two feet from where McClendon stood. McClendon and Poe submitted to the officers' authority, completing the seizure before McClendon, according to Cadichon, dropped the gun.

¶ 28 To determine whether the drop resulted from illegal police conduct, the court examines several factors, including the temporal proximity, lack of intervening circumstances, and lack of justification for the seizure. Here, the only reason the police officers were in the area was to effectuate an illegal arrest and search, as there was no evidence that McClendon had committed a crime. McClendon abandoned the gun in response to his illegal seizure, and the gun and the fruits of the ensuing arrest should have been suppressed. See *Craine*, 2020 IL App (1st) 163403, ¶ 58. If defense counsel had appropriately argued that the illegal seizure made ownership of the porch irrelevant to the motion to suppress, the trial court should have granted the motion to suppress the gun.

¶ 29 The court also should have suppressed McDermott's testimony about any statements McClendon made in the interview in the police station. According to McDermott, McClendon made the statements before midnight on October 10, 2014, less than an hour after McDermott first heard the report of gunfire on Hoxie Avenue. The discovery of the gun, as the fruit of an illegal seizure, does not break the causal chain from the seizure to the statements. See *People v. Vought*, 174 Ill. App. 3d 563, 573 (1988).

¶ 30 Without the gun and statements that the trial court should have suppressed, the State had no evidence to present against McClendon. We adopt the reasoning of *Bloxton*, 2020 IL App (1st) 181216, ¶ 30:

> "[H]ad the suppression motion been granted, the gun would have been excluded from evidence. Had the gun been excluded, [the defendant] could not have been convicted ***. Thus, [the defendant] was prejudiced by his attorney's failure to raise the proper argument. Further, the State would be unable to proceed without the suppressed evidence."

We also find *Craine* instructive, in finding that since "the fruits of the officers' search must be suppressed, the State would not be able to convict defendant on remand." *Craine*, 2020 IL App (1st) 163403, ¶ 59; see also *People v. Lopez*, 2018 IL App (1st) 153331, ¶ 38; *People v. Green*, 358 Ill. App. 3d 456, 463-64 (2005).

¶ 31 Rather than returning the case to the trial court for reconsideration of the meritorious motion to suppress, the appellate court in *Bloxton*, *Craine*, *Lopez*, and *Green* reversed the conviction and vacated the sentence without remand. Here, we also reverse the conviction and vacate the sentence without remand. Because we reverse the conviction based on suppression of evidence, we need not reach McClendon's remaining arguments, and our resolution of the direct appeal moots the appeal from the dismissal of the postconviction petition.

¶ 32                              III. CONCLUSION

¶ 33 McClendon has shown that if his attorney had argued the illegal seizure required suppression of the gun and testimony about statements obtained as a result of the illegal seizure, the trial court should have granted the motion to suppress. Without the gun and the testimony about statements, the State had no case to present against McClendon. Accordingly, we reverse the conviction and vacate the sentence.

¶ 34 Reversed; sentence vacated.

**No. 1-16-3406**

| | |
|---|---|
| **Cite as:** | *People v. McClendon*, 2022 IL App (1st) 163406 |
| **Decision Under Review:** | Appeal from the Circuit Court of Cook County, No. 14-CR-18685; the Hon. Thomas J. Byrne, Judge, presiding. |
| **Attorneys for Appellant:** | James E. Chadd, Douglas R. Hoff, and Kelly Anne Burden, of State Appellate Defender's Office, of Chicago, for appellant. |
| **Attorneys for Appellee:** | Kimberly M. Foxx, State's Attorney, of Chicago (John E. Nowak and Jon Walters, Assistant State's Attorneys, of counsel), for the People. |